Claud B. MORGAN, Plaintiff,

v.

BADGER MUTUAL INSURANCE COMPANY, a Wisconsin Corporation, The Jefferson Mutuals, an Alabama Corporation, Iowa Mutual Insurance Company, an Iowa Corporation, The Yorkshire Insurance Company of New York, a New York Corporation, The Commercial Union Fire Insurance Company of New York, a New York Corporation, The London Assurance, a New York Corporation, and The Travelers Indemnity Company, a Connecticut Corporation, Defendants.

Civ. A. No. 965.

United States District Court
N. D. Florida,
Pensacola Division.
Feb. 28, 1961.

See also 181 F.Supp. 496.

James W. Middleton, Ft. Walton Beach, Fla., Mallory E. Horne, Tallahassee, Fla., for plaintiff.

E. Dixie Beggs, of Yonge, Beggs & Lane, Pensacola, Fla., Keen, O'Kelley & Spitz, Tallahassee, Fla., for defendants.

CARSWELL, Chief Judge.

This action was instituted by plaintiff to recover sums of money under policies of insurance on property destroyed by fire. After protracted litigation, the jury returned a verdict in behalf of plaintiff in the amount of $75,842.22.

The various insurers now raise the question of apportionment of liability between them. There are two groups of insurers, one comprised of mutual companies and the other comprised of stock companies. Each of the mutual companies' policies contain the following clause:

"This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not."

The stock companies' policies contain the following provisions:

"Other Insurance"

"This policy does not attach to or become insurance against any peril upon property herein described, which at the time of any loss is covered by other insurance (meaning insurance in the name of the Insured but not written upon the identical plan, terms, conditions and provisions contained in this policy) until the liability of such other insurance has been exhausted, and then shall cover only such loss as may exceed the amount due from such other insurance (whether collectible or not) after application of any contribution, co-insurance, average or distribution or other clauses contained in policies of such other insurance affecting the amount collectible thereunder, not, however, exceeding the limits as set forth herein."

"This Company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the

peril involved, whether collectible or not."

The mutual companies urge that the insurance coverage afforded in their own policies and in the stock companies' policies comprises "whole insurance covering the property against the peril involved." They say that the entire loss should be prorated between all of the companies, both stock and mutuals, and that even in spite of the "other insurance" clause of the stock companies' policies the whole of the insurance includes the excess or blanket insurance, and the entire loss should be prorated. The insurance is not, they say, floating type or excess insurance, and further claim that the amount of premiums which the stock companies received is indicative of the risk that the stock companies assumed. They point out that the premium was little more than that received by the mutuals for the specific coverage. Therefore, if the loss is not prorated, the specific insurers will be required to pay a greater portion of the loss than will the excess insurers. This, they urge, would do violence to the terms of their own policies which require apportionment where there is other insurance, and in effect means they bear a greater loss for less premium.

The stock companies contend that the insurance upon the various locations consists of floating insurance. This insurance is effective only after the specific insurance has been exhausted. The stock companies account for the increase in premiums by showing that there is no fixed premium of insurance. The premium to be paid depends upon the inventory at each of the locations at certain intervals. The insured reports the inventory periodically, and the premium is adjusted periodically to account for the differential in inventory. The stock companies claim that the risk is greater under the floater policies because of the varied location of the risks, and the varied valuation of the inventory in any one period.

In order to sustain the position adopted by the mutual companies, the Court would be required to invalidate the "other insurance" clause, and ignore the monthly reporting type premium clause. In order to do this, the Court would have to find that the clause is either in conflict with other provisions in the policy, or in conflict with the provisions of the mutual companies' policies. The Court invalidated the "other insurance" provisions of both insurance policies in the case of Continental Casualty Co. v. St. Paul Mercury Fire and Marine Insurance Co., D.C.S.D.Fla.1958, 163 F. Supp. 325. In that case, however, the Court was unable to determine under which policy liability first attached. Each policy claimed to be excess insurance if there was found to be other insurance. The Court held that the policies were repugnant to each other and ordered a prorata distribution invalidating the repugnant clauses. See also Oregon Auto Ins. Co. v. United States Fidelity and Guaranty Co., 9 Cir., 1952, 195 F.2d 958. Both of these cases deal with automobile insurance liability, and are not authority for the proposition urged.

There is no question from reading the policies issued by the mutual companies that the coverage afforded in their policies is specific insurance. A specific policy covers specific property, at a specific location for a specific amount and for a specific premium. The mutual policies are therefore specific in nature. In construing the prorata distribution clause in the mutual policies, the insurer is liable to the extent of his policy. If there are two or more specific policies, then they prorate their liability to the extent of their coverage. Gillies et al. v. Michigan Millers Mut. Fire Ins. Co., 1950, 98 Cal.App.2d 743, 221 P.2d 272. Whether the stock companies' policies are specific or floating can be determined by examining the risk assumed, and the payment of premiums. The stock companies here provided coverage to the maximum of certain amounts over six locations and over locations which were to be specified in a monthly report. It also provided for coverage anywhere in the United States, and while merchandise in a cer-

tain amount was in transit. The maximum amounts of coverage are stated in the policy, but the terms of the policy permit the insured to vary the amount of coverage within those maximums depending upon how much inventory is carried at any particular location. The premiums are not fixed, but may be adjusted to the value of the inventory at the various locations, determined on the basis of monthly reporting. There is nothing which can be construed under this policy as specific, except the maximums of coverage, or the minimums of premium. These policies are classically floater type policies. In construction of an insurance policy the rules to be followed are well settled. The language of the policy must be given its plain meaning, and construed as a whole, with no perversion of the language. Hale v. Central Mfrs. Mut. Ins. Co., Mo.App. 1936, 93 S.W.2d 271. It is clear that the stock companies have floater type coverage.

█ The "other insurance" provision in floater policies is valid and has generally been accepted, recognized and given effect. Dubuque Fire & Marine Ins. Co. v. Reynolds Co., Inc., 5 Cir., 1924, 128 F.2d 665, certiorari denied 317 U.S. 657, 63 S.Ct. 56, 87 L.Ed. 529. The prior payment of specific policies is treated as a condition precedent to the existence of the floater policy. The policies were issued and accepted subject to the express provisions that they afford coverage and attach only after the specific insurance has been exhausted. Hale v. Central Mfrs. Mut. Ins. Co., supra.

█ A floating policy is one intended to supplement specific insurance, and attaches only when the latter ceases to cover the risk. The reason for the creation and the purpose of this character of policy is to provide indemnity for property which cannot because of frequent change in location and quantity be covered by specific insurance. Gross et al. v. New York & T. S. S. Co., D.C.S.D. N.Y.1901, 107 F. 516; Fairchild et al. v. Liverpool and London Fire and Life Insurance Co., 1872, 51 N.Y. 65; Klotz Tailoring Co. v. Eastern Fire Ins. Co., 1907, 116 App.Div. 723, 102 N.Y.S. 82. Floating insurance by its terms cannot be operative until prior insurance is exhausted. Wilson and Co., Inc. v. Hartford Fire Ins. Co., 1923, 300 Mo. 1, 254 S. W. 266, at page 282. If excess clauses were not given effect, the insured would be required to purchase specific insurance on all property at every location and in addition to being prohibitive as to cost, the insured might not know from one month to the next what amount of stock would be at what location. Peters v. Great American Insurance Co., 5 Cir., 1949, 177 F.2d 773.

█ The Court finds no difficulty in giving effect to all the provisions of the policies in question. The prorata clauses in the mutual policies are effective between specific insurers. The stock companies' policies are not effective by their terms until the specific coverage is exhausted, and the prorata clause in the stock companies' floater policies is effective as between all the insurers giving coverage on floating policies.

There being no conflict between the policies, the Court finds that the mutual companies as specific insurers are liable for that which is encompassed by the specific insurance. If there is any excess not covered by the specific policies, and within the coverage afforded by the floater policies, the liability of the stock companies then accrues.

Settle order to be entered upon submission.