**UNITED SERVICES AUTOMOBILE ASSOCIATION, Respondent,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant.**

**No. KCD 27869.**

Missouri Court of Appeals, Kansas City District.

Aug. 8, 1977.

Laurence R. Tucker, Morris, Mitchell, Larson, King, Stamper & Bold, Kansas City, for appellant.

Edward H. Sheppard, Charles A. Schliebs, Blackwell, Sanders, Matheny, Weary & Lombari, Kansas City, for respondent.

Before SWOFFORD, P. J., PRITCHARD, C. J., and DIXON, J.

SWOFFORD, Presiding Judge.

The underlying facts of this case are that an insured under policies issued by each of the parties hereto sustained a fire loss covered by the insurance. Each of the companies claimed that under the terms of the policies the other company was responsible for the entire loss. They were unable to agree and each paid to the insured a pro rata proportion of the loss. United Services Automobile Association (U.S.A.A.) respondent, thereupon instituted suit against United States Fidelity and Guaranty Company (U.S.F. & G.), appellant, to recover the amount it had paid to the insured, and U.S.F. & G. counterclaimed for the amount it had paid on the loss. The case was tried before the court below, without a jury, on a stipulation of facts, as follows:

"STIPULATION OF FACTS

COMES NOW plaintiff, United Services Automobile Association, (hereinafter U.S.A.A.), and defendant, United States Fidelity and Guaranty Company, (hereinafter U.S.F. & G.), and stipulate for the purposes of this case only that the following facts are true:

1. Jurisdiction and venue of the parties are proper.

2. On or about January 24, 1970, a fire at the residence of LTC. Paul E. Brown, 4301 North Central, Kansas City, Missouri, caused damage to his household goods and personal property. The total fire loss to his household goods and personal property amounted to Nine Thousand Four Hundred Eighy-Eight (sic) and $^{22}/_{100}$ ($9,488.22) Dollars.

3. On or about January 24, 1970, U.S.A.A. had in force an insurance policy, titled 'Household Goods and Personal Effects Floater', No. 124044–50, insuring personal property and household goods owned by its insured, Paul Brown, a specimen copy of that policy is attached hereto, marked Exhibit A, and is made a part hereof.

4. On or about January 24, 1970, U.S.F. & G. had in force a homeowner's policy, No. HOU1023572, insuring the dwelling at 4301 Central (sic), Kansas City, Missouri, personal property and household goods owned by its insureds, Paul E. & Rachel E. Brown, a specimen copy of that policy is attached hereto, marked Exhibit B, and made a part hereof.

5. U.S.A.A.'s policy No. 124044–50 stated under Condition 4:

'OTHER INSURANCE: If at the time of loss or damage there is: (a) property separately described and specifically insured, or (b) trip-transit insurance in force which would attach on the property insured hereunder had this policy not been effected, then this insurance shall apply as excess insurance over the liability of such other insurance; and in event there is other (than specified) valid insurance covering on said loss, payment shall be prorated on the basis of the total insurance applicable thereon.'

6. U.S.F. & G.'s policy No. HOU1023572 provided under MIC–4 'Description of Property and Interests Covered', Coverage C—'Unscheduled Personal Property', section 1, 'On premises':

'This coverage does not include: . . property which is separately described and specifically insured in whole or in part by this or any other insurance.'

7. U.S.A.A. made demand upon U.S.F. & G. to pay the total fire damage claim submitted by insured Brown alleging that U.S.F. & G.'s policy afforded specific primary coverage to the personal property and household goods of Paul E. & Rachel E. Brown, located at 4301 North Central, Kansas City, Missouri, and alleging that U.S.A.A.'s policy was a general policy affording only excess coverage.

8. U.S.F. & G. refused to pay the total amount of the fire damage claim alleging that whereas U.S.A.A.'s policy's 'Other Insurance' exclusion permitted the policy to be excess, U.S.F. & G.'s policy's 'Other Insurance' exclusion forbade any coverage in the presence of other insurance, therefore U.S.A.A.'s policy is primary and should provide the full coverage.

9. Because both parties refused to pay the full amount of the fire damage claim U.S.A.A., on or about May 4, 1970, transmitted Six Thousand Four Hundred Sixty-Nine and $^{24}/_{100}$ ($6,469.24) Dollars to its insured, Paul. E. Brown, and its prorata share of the fire loss as in return took a 'Loan Receipt' signed by Brown. A copy of the 'Loan Receipt' is attached hereto, marked Exhibit D, and made a part hereof. U.S.F. & G., on or about April 15, 1970, transmitted to its insureds, Paul E. ad Rachel E. Brown, the amount of Eight Thousand Fifty-One and $^{65}/_{100}$ ($8,051.65) Dollars of which Three Thousand Eighteen and $^{98}/_{100}$ ($3,018.98) Dollars was for unscheduled personal property as its prorata share of the fire loss. A copy of the draft made out in payment to Paul E. and Rachel E. Brown and a copy of the Proof of Loss are attached hereto, marked Exhibits E & F, and made a part hereof.

10. U.S.A.A. prays judgment against U.S.F. & G. in the amount of Six Thousand Four Hundred Sixty-Nine and $^{24}/_{100}$ ($6,469.24) Dollars and its costs as the amount allegedly owing under the terms of U.S.F. & G.'s policy No. HOU1023572 as sole primary coverage, and U.S.F. & G. prays judgment against U.S.A.A. in the amount of Three Thousand Eighteen and $^{98}/_{100}$ ($3,018.98) Dollars and its costs as the amount allegedly owing under the U.S.A.A.'s policy No. 124044–50 as sole primary coverage."

The court below entered a judgment in favor of U.S.A.A. on its petition and against U.S.F. & G. on its counterclaim. From that judgment U.S.F. & G. appeals.

U.S.F. & G. advances one point on appeal. It urges that the trial court erred in awarding judgment to U.S.A.A. because the evidence failed to support such finding for three reasons. (IA) The U.S.A.A. insurance policy is no less specific in its coverage than that of the U.S.F. & G. policy and as a result the "other insurance" clause in the U.S.A.A. policy is of no effect and therefore such policy is primary in coverage. (IB) The "other insurance" clauses in the policies are mutually repugnant and therefore, the fire loss suffered by the insured should be prorated. (IC) U.S.A.A. was a "volunteer" in making its payment to the insured and thus cannot recover the funds already paid.

A correct resolution of these arguments initially requires an analysis of the pertinent provisions of the two policies here involved so that they may be categorized as to the type of coverage afforded by each.

### U.S.A.A. POLICY

This policy is designated as a "Household Goods and Personal Effects Floater." It provides:

"PROPERTY COVERED

This policy insures personal property owned by or in the custody of the insured and dependent members of his family, if residents of the same household, within the following classifications: personal effects, clothing, uniforms, household goods, non-professional books, collections, sports and hobby equipment, military equipment of all kinds; the equipment and accessories of motor vehicles, trailers and boats while detached from and not being used with a motor vehicle, trailer or boat (provided such equipment and accessories are not otherwise insured); professional instruments, books and other equipment provided such property is not being currently used in private profession."

\*  \*  \*  \*  \*  \*

"POLICY PERIOD, TERRITORY

(a) This policy applies only to losses or damage occurring during the policy period, and

(b) *This policy is valid World-Wide.*" (Emphasis supplied)

\*  \*  \*  \*  \*  \*

"4. OTHER INSURANCE. If at the time of loss or damage there is: (a) property separately described and specifically insured,  .  .  .  then this insurance shall apply as excess insurance over the liability of such other insurance; and in event there is other (than specified) valid insurance covering on said loss, payment shall be pro rated on the basis of the total insurance applicable thereon."

### U.S.F. & G. POLICY

This policy is designated *"Homeowners Policy"* and the form and endorsement here involved is designated *"Residence Contents—Broad Form"*. It provides:

"DESCRIPTION OF PROPERTY AND INTERESTS COVERED

COVERAGE C—UNSCHEDULED PERSONAL PROPERTY.

'1. On Premises: This policy covers unscheduled personal property usual or incidental to the occupancy of the premises as a dwelling, owned, worn or used by an Insured, *while on the premises,* or at the option of the Named Insured, owned by others while on the portion of the premises occupied exclusively by the Insured.

'This coverage does not include: . . property which is separately described and specifically insured in whole or in part by this or any other insurance.'

\* \* \* \* \* \*

'This company shall not be liable for a greater proportion of any loss than the amount hereby insured shall bear to the whole insurance covering the property against the peril involved, whether collectible or not.'" (Emphasis supplied)

None of the property, the loss of which is here involved, was specifically scheduled in either policy.

Insurance texts and cases have come to recognize a well marked and fundamental difference between a "floater" policy of insurance and a "specific" policy of insurance as relating to personal property, and now recognize the limits of responsibility for coverage as between an insurer under a floater policy and an insurer under a specific policy, as regards the same property.

In 6 Appleman, Insurance Law and Practice, Section 3912, pp. 481–485, these general principles are thus stated:

"A blanket, compound, or *floater* policy is written upon a risk as a whole, embracing whatever articles or items are included therein, often changing in its nature, in contravention thereto, a specific policy is one which allocates the amount of the risk in stated values upon the several items embraced in the coverage, *or covers property at a designated location for a stated amount,* or insures against a specific peril. In making an apportionment between blanket and specific policies, it is necessary that a rule be adopted that will give the insured complete indemnity for his loss. *A blanket or floating policy is only intended to supplement specific insurance, and it cannot become operative until the specific insurance has become exhausted.* A provision of a blanket policy that it should attach only after the specific insurance had been exhausted referred to specific insurance in effect *at the time of the loss,* and not at the time of the issuance of the policy. And specific insurance is deemed exhausted when the insured has collected all that can be collected for a loss arising from a risk insured against.

If the specific insurance exceeds the value of the property destroyed, the insurer under a blanket policy will not be liable for a pro rata share of the loss." (Emphasis added)

In *Wilson & Co. v. Hartford Fire Ins. Co.,* 300 Mo. 1, 254 S.W. 266, 282 [18] (1923), a landmark case, the rule is stated as follows:

"\* \* \* The texts and cases tell us that a floating policy is one intended to supplement specific insurance on property, and attaches only when the latter ceases to cover the risk. [citations omitted]. The reason for the creation and the purpose of this character of policy is to provide indemnity for property which cannot, because of its frequent change in location and quantity, be covered by specific insurance. [citations omitted].

Floating or surplus insurance is a form of indemnity not infrequently resorted to, especially when the property insured is of such a nature as not to admit of a gross valuation. By its terms it cannot become operative until the prior insurance has been exhausted. \* \* \* "

Citing *Wilson & Co. v. Hartford Fire Ins. Co.,* supra, the court in *Davis Yarn Co. v. Brooklyn Yarn Dye Co.,* 293 N.Y. 236, 56 N.E.2d 564, 571–572 [5] (1944), said:

"'\* \* \* The term 'specific' as applied in insurance phraseology is frequently used *in contrast with blanket insurance,* the former denoting coverage of a particular piece of property *or property at a specific location,* as contrasted with the latter which covers the same and other property in several different locations.' \* \* \* " (First emphasis the Court's; second emphasis added)

For other cases citing and following *Wilson, supra,* see: *Jorski Mill & Elevator Co. v. Farmers Elevator Mut. Ins. Co.,* 404 F.2d 143, 146 [2, 3] (10 Cir. 1968); *Morgan v. Badger Mutual Insurance Company,* 192 F.Supp. 249, 252 [6] (D.C. 1961), stating, "Floating insurance by its terms cannot be

operative until prior insurance is exhausted." See also, Annot. 13 A.L.R.2d 705, 717–718 (1950); Annot. 169 A.L.R. 384, 390–391 (1947).

■ An analysis of the two insurance policies here involved leads to the inevitable conclusion that the U.S.A.A. policy is a blanket or floater policy. Not only is it so designated in unequivocal terms, but it covers certain classes of personal property upon a "world-wide" basis. Coverage not definite as to the location of the property insured is a distinctive characteristic of a floater policy. *Wilson & Co. v. Hartford, supra.*

■ On the other hand, the U.S.F. & G. policy is designated "Homeowners Policy" and among other types of coverage afforded insurers "C. Unscheduled Personal Property" located at the premises of the insured at 4301 North Central, Kansas City, Missouri (which dwelling was also insured) where the fire causing the loss occurred, to the limit of $14,000.00. It thus falls squarely within the characteristics peculiar to specific insurance as noted in Appleman, and *Wilson & Co. v. Hartford,* supra, in that it covers property at a designated location for a stated amount.

■ Since the U.S.A.A. policy affords blanket or floater coverage and the U.S.F. & G. is a specific coverage policy under the principles above discussed, the latter affords primary coverage and the former is only supplemental or excess coverage and responsibility attaches under it only when the specific coverage has been exhausted.

In *Hale v. Central Mfrs. Mut. Ins. Co.,* 93 S.W.2d 271, 274 [5] (Mo.App. 1936), the suit involved a claim upon a blanket fire insurance policy containing a provision that the insurance provided attached only after specific insurance had been exhausted. The court held that such exhaustion of specific insurance was a condition precedent to any right to recover under the blanket or floater policy. See also, *Morgan v. Badger Mutual Insurance Company,* 192 F.Supp. 249, 252 [5] (D.C. 1961).

Since the U.S.F. & G. coverage exceeded the total amount of the loss, no liability existed under U.S.A.A.'s policy. Appellant's Point IA is ruled against it.

■ U.S.F. & G. urges (IB) as an alternative, that the "other insurance" clauses in the policies are repugnant and mutually destructive and, therefore, the loss was properly prorated as between the companies. Such contention is invalid in light of the fact that the policies here fall in distinct and different categories and insure against different losses in different areas, as above concluded. No difficulty is encountered in giving effect to all of the provisions, including the "other insurance" clauses in each policy. Had there been other excess or floater insurance, any loss over and above the amount of specific insurance would properly be prorated as between U.S.A.A. and such other insurer. The same result would be required had there been other specific insurance under the "other insurance" clause in the U.S.F. & G. policy. In *Hale v. Central Mfrs. Mut. Co., supra,* the court was called upon to interpret an "other insurance" clause in a floater or excess insurance policy and stated, l.c. 275 [8]:

" * * * It obviously has no application until the policy covers and attaches, and this does not occur until the specific insurance has been exhausted. The effect of the provision is to limit defendant's liability for any loss or damage over and above the specific insurance to such proportion of such loss and damage as the amount of policy in suit bears to all the *excess insurance covering the property, if there is any other excess insurance. It necessarily refers to the excess loss and damage, because the policy covers and attaches only after the specific insurance is exhausted.* A similar provision appeared in the blanket policy involved in *Wilson Co. v. Hartford Fire Ins. Co.,* supra, and the Supreme Court held that the blanket policy did not apply until the specific insurance granted by the Hartford Company had been exhausted." (Emphasis supplied)

The reasoning thus advanced logically applies with equal force to the "other insur-

ance" provision of U.S.F. & G.'s policy and it would be entitled to pro rata contribution only from other primary carriers not from excess or floater carriers.

Point IB is ruled against appellant.

Appellant's third point (IC) that U.S.A.A., by paying the insured, under a loan receipt, a portion of his loss, became a volunteer and is, therefore, not entitled to recover from U.S.F. & G. is without merit. From the stipulated facts it is conceded that from the outset, U.S.A.A. contended that U.S.F. & G. was liable for the whole loss and U.S.F. & G. refused to pay the whole loss. Stipulation of Facts, paragraphs 7, 8, 9 and 10. It is also apparent that both companies recognizing a forthcoming protracted dispute over coverage and in the public interest that fire losses of this kind be promptly paid, did in fact jointly satisfy the insured's loss. It was salutary and morally proper that they do this. In so doing, it is obvious that neither company intended to waive any rights or claims that they might have against the other. And neither by so doing became a volunteer in the legal sense. The sole authority relied upon by the appellant, *Commercial Union Ins. Co. v. Farmers Mut. Fire Ins. Co.*, 457 S.W.2d 224 (Mo.App. 1970) has been carefully reviewed and analyzed and is found to be factually inapposite and is not persuasive authority supportive of appellant's position. Point IC is ruled against appellant.

The judgment is affirmed.

All concur.