The WESTERN CASUALTY & SURETY COMPANY, Plaintiff-Appellant,

v.

Donald H. KOHM,
Defendant-Respondent.

No. 44248.

Missouri Court of Appeals,
Eastern District,
Division Four.

Aug. 24, 1982.

Robert H. Burns, John H. Marshall, Clayton, for plaintiff-appellant.

Charles P. Todt, Clayton, for defendant-respondent.

PUDLOWSKI, Judge.

The Western Casualty & Surety Co. (Western) brought an action for money had and received to recover $2400 mistakenly paid to its insured, Donald H. Kohm. The case was submitted to the trial court upon a stipulated statement of facts and memoranda of law. The trial court found for the defendant, and Western appeals.

 Because the facts were stipulated, the only question before this court is whether the trial court drew the proper legal conclusions 'from the facts stipulated. *Schroeder v. Horack,* 592 S.W.2d 742 (Mo. banc 1979). No timely request for findings of fact or conclusions of law was made by either party as provided in Rule 73.01(a)(2), therefore, none were provided by the trial court. Because no conclusions of law were stated, we must affirm the judgment of the trial court if we can find it to be correct under any reasonable theory supported by the evidence. *Lurtz v. Ehlers,* 608 S.W.2d 147 (Mo.App.1980).

The facts are as follows: the defendant received a 1974 Capri Automobile as a high school graduation gift from his father. The car was titled in his father's name. The defendant purchased insurance from Western but did not purchase collision coverage. On December 24, 1976, the defendant was involved in an accident and his automobile sustained damage. The day after the accident, defendant told his father that he had not purchased collision coverage on the Capri because it cost too much. The accident was reported to the insurance agent who wrote the policy on the car. The agent prepared an accident notice which he forwarded to Western. The accident notice form included a section describing coverage under defendant's policy. There was no indication of any collision coverage on this form. Upon receiving notice of the accident, Western arranged to have the investigation done by an independent adjusting company, which in turn assigned one of its employees as adjuster. The assignment form gave no notation of collision coverage, but the first report made by the adjuster described the policy as including $100-deductible collision coverage. The adjuster found the value of the damaged auto to be $2500, forwarded a proof-of-loss form to the insured, and requested a draft in the amount of $2400 payable to the insured and his father.

The defendant signed the sworn and notarized proof-of-loss form on February 10, 1977. Shortly thereafter, the adjuster delivered the $2400 check to defendant's father and took title to the car in return; the defendant was not home at the time. The defendant eventually cashed this check and purchased a 1975 Ford Elite which he had titled in his own name.

There is no allegation or indication in the record that the defendant misled either the adjuster or Western by claiming to have collision coverage. It was stipulated that the defendant did not expect to receive the $2400 check. The only factual disagreement between the parties is whether the defendant's father, before receiving the check, told the adjuster that he did not understand why he was getting the check because there was no coverage. According to the stipulation, defendant's father claimed to have made such a statement, but the adjuster denied it. (As will be seen, the resolution of this matter is not affected by the existence or nonexistence of such a statement).

On April 7, 1977, approximately two months after payment had been made, the adjuster discovered his mistake—that defendant had never had collision coverage. On April 13, 1977, the adjusting firm wrote to defendant requesting the return of $2400 to Western. The demand for repayment was rejected by the defendant.

Western maintains that it is entitled to repayment because it made a mistake of fact concerning the extent of defendant's

coverage. Defendant contends that the insurance company should be held to have constructive knowledge of its own policy provisions, and that Western's action must be viewed as a mistake of law or a "voluntary payment" for which restitution cannot be granted. Defendant also argues that he should not be required to repay Western in any case, since by spending the money on a replacement vehicle, he has so changed his position that it would be unjust to require repayment.

In addition, both parties devoted portions of their briefs and argument to the status of the adjuster as an agent or independent contractor, the scope of the adjuster's authority, and the possibility of ratification of the adjuster's actions by Western. We do not decide any of these questions, since there is really no question here of imputing actions of the adjuster to Western. The $2400 payment was an independent act of Western and in no way an act of the adjuster. The resolution of this case depends upon the legal effect of the payment made by Western itself, not the presence or absence of any agency relationship.

The general rule applied in cases of mistaken payment is that restitution will be granted when the payment is made under a mistake of fact, but not when the payment is made under a mistake of law. *Handly v. Lyons,* 475 S.W.2d 451, 461 (Mo. App.1971); D. Dobbs, Remedies, § 11.1, 11.7 (1973); Anno., "Right of insurer to payments made under mistake," 167 A.L.R. 470 (1947). This general rule is subject to a number of broad exceptions, two of which are pertinent here. It is well settled that restitution will be granted to remedy a payment made because of a mistake of law if the surrounding facts raise an independent equity, as when the mistake is induced, or is accompanied by inequitable conduct of the other party. *Handly v. Lyons, supra,* 475 S.W.2d at 462; *Glover v. Metropolitan Life Ins. Co.,* 664 F.2d 1101, 1104 (8th Cir. 1981). Also, restitution will *not* be granted to remedy a mistake of fact if the payee has so

changed his position that it would be unjust to require restitution. *State Farm Mutual Insurance Co. v. Sabourin,* 574 S.W.2d 8, 10 (Mo.App.1978). Given the broad scope of these exceptions, it should be apparent that the mere labelling of a mistake as one of "law" or "fact" is rarely dispositive of a case. The usefulness of the distinction has been questioned in Missouri. *Handly, supra,* 475 S.W.2d at 462, footnote 1; *accord,* D. Dobbs, Remedies, at § 11.8. Handly did not explicitly reject the traditional analysis, but did suggest that the same results could be reached by applying a more streamlined unjust enrichment analysis. Under this analysis, restitution should be granted "whenever a person has received money which in equity and good conscience belongs to and should be paid to another." *Handly, supra,* 475 S.W.2d at 462.

This does not mean that the traditional analysis is irrelevant. It is still necessary to consider the nature of the mistake, the circumstances under which it was made, the conduct of the payee, and so on, insofar as these factors indicate whether it would be "unjust" to permit retention of the benefit. See generally J. Wade, "Restitution for benefits conferred without request," 19 Vand.L.Rev. 1183 (1966).

In the case before us, defendant admits that he accepted and cashed a check for $2400 which he did not expect, knowing that he was not entitled to the money. He never believed that he had collision coverage and never attempted to mislead Western about his policy.

Because he had no dispute with Western about the amount due under the policy, defendant could not have believed that Western's payment was voluntarily made to settle or compromise a disputed claim. Compare Restatement, Restitution, § 11; Anno., 167 A.L.R. at 476. Clearly he must have realized that Western was making a mistake.

Apparently one or more of Western's employees arranged for payment to

defendant without knowing the actual terms of defendant's policy. But the corporation must be held to have constructive knowledge of the contents of defendant's policy. Western's error did not encompass any facts beyond its own records, and did not involve any interpretation of the contract or of state law. No actions of Western would have led defendant to believe that he was entitled to payment for collision damage. A few days after discovery of the mistake, the adjusting firm employed by Western made a written demand for return of its payment. Suit was filed by Western on June 1, 1977, approximately two months after the mistake was discovered.

■ It has long been accepted that a payor's lack of care will not diminish his right to recover, or somehow justify retention of the windfall by an unintended beneficiary. *Dobson v. Winner,* 26 Mo.App. 329, 335 (1887); Restatement, Restitution, § 59, Comment (a); Anno., 167 A.L.R. at 473. To put the matter in perspective: if a consumer, despite having adequate financial records, carelessly overpaid his insurance premium, he would certainly be entitled to reclaim the money despite the fact that he had been negligent in sending it.

The stipulated facts presented to the trial court show plainly that defendant was not entitled "in equity and good conscience" to the proceeds of Western's check at the time he received it. We next consider whether subsequent events so changed defendant's position that it would now be unjust to require him to return the money.

■ Defendant used the money to purchase a car. Normally this type of change is *not* sufficient to bar restitution, since a purchaser generally receives something of value for his money. *Picotte v. Mills,* 200 Mo.App. 127, 137, 203 S.W. 825, 829 (1918); Restatement, Restitution, § 142, comment (b); Dobbs, Remedies, § 11.9. Defendant has not given up any substantial rights or benefits which he held prior to receiving the windfall payment from Western, so we cannot find that he relied on the payment to his detriment. *Id.* Further, we note that Western made its claim for repayment only two months after defendant had received the check (compare the delay of several years in *Schrock, supra,* 447 S.W.2d at 810, 811).

In fact, as we have concluded above, defendant knew that he had no right to the money from the moment he received it. This further distinguishes the present case from *Schrock.* In that case, the recipient accepted money believing in good faith that she was entitled to it. Under these circumstances, defendant cannot be heard to argue that he changed his position in reliance on a payment which he knew he had no right to. See Restatement, Restitution, § 142(3)(b).

Although we recognize that repayment may be an inconvenience for defendant, we cannot find that he has changed his position in such a significant way that it would be inequitable to require that he return the money.

Yet, we are concerned about the value of the Capri automobile at the time of its taking and any damage the defendant may have sustained. The sketchy transcript fails to reveal the salvaged value of the automobile or damage the defendant incurred.

Therefore, the judgment is reversed and remanded to the trial court for further hearing to ascertain the value of the damaged automobile and damages, if any. The defendant is ordered to pay plaintiff $2400, without interest, less, the value of the automobile and any damages defendant may have sustained from the date of the accident to April 15. Costs of this appeal to be paid by plaintiff.

SMITH, P. J., and SATZ, J., concur.