854 F.2d 1264
 TOWNE REALTY, INC., d/b/a Tri Realty, Inc., Plaintiff,
v.
SAFECO INSURANCE COMPANY OF AMERICA, Defendant-Cross-Claim
Plaintiff-Appellant,
v.
LEXINGTON INSURANCE COMPANY, Commercial Union Insurance Co.,
Defendants-Cross-Claim Defendants-Appellees.
 No. 87-3420.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 14, 1988.
 
 Roland A. Sutcliffe, Jr., Zimmerman, Shuffield, Kiser & Sutcliffe, Orlando, Fla., for defendant-cross-claim plaintiff-appellant.
 Terry D. Bork, Jacksonville, Fla., for Lexington.
 W. Douglas Childs, Jacksonville, Fla., for Commercial Union.
 Appeal from the United States District Court for the Middle District of Florida.
 Before KRAVITCH and CLARK, Circuit Judges, and NICHOLS*, Senior Circuit Judge.
 CLARK, Circuit Judge:
 
 
 1
 This appeal arises from a dispute between three insurance companies as to their respective liability for a settlement agreement entered into by their insured, Towne Realty, Inc. ("Towne"), and an injured third party. Towne brought a diversity action against the three insurers--Safeco Insurance Co. of America ("Safeco"), Commercial Union Insurance Co. ("Commercial Union"), and Lexington Insurance Co. ("Lexington")--to resolve the dispute, and the district court held that Safeco exclusively was liable. Safeco appealed, and we reverse.
 
 
 2
 On December 27, 1980, Charles L. Stephens was beaten and severely injured while delivering newspapers at the Villa Armada Apartments. The apartments were owned by a joint venture consisting of three individuals ("the Owners") and were managed by Towne. To recover for his injuries, Stephens and his wife brought a state court suit against both the Owners and Towne.
 
 
 3
 At the time of the attack on Stephens, both the Owners and Towne were insured by Safeco. The Safeco policy provided $1,000,000 of coverage for liability arising out of the ownership and management of the apartments. Towne was additionally covered by policies issued by Commercial Union and Lexington. The Commercial Union policy provided $500,000 in liability coverage for properties owned or managed by Towne throughout the country. Towne would periodically add and delete properties to the policy, and at the end of the year the premium would be recalculated based on the additions and deletions. The Lexington policy also provided $500,000 in liability coverage for Towne's various properties, but it had no reporting requirements and a flat premium.
 
 
 4
 All three policies included "other insurance" clauses limiting the insurers' liability for a particular loss if other insurance applied. Commercial Union's policy included the following language:
 
 
 5
 The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance.
 
 
 6
 When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:
 
 
 7
 (a) Contribution by Equal Shares. If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the loss is paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.
 
 
 8
 (b) Contribution by Limits. If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss.
 
 
 9
 Record, Vol. I, Tab 13, Exh. D at 11. Safeco's "other insurance" provision stated:
 
 
 10
 If applicable to the loss, there is any valid and collectible insurance, whether on a primary, excess or contingent basis, available to the insured (by this or any other carrier), there shall be no insurance afforded hereunder as respects such loss, except, that if the applicable limit of liability of this policy is in excess of the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to afford the insured a combined limit of liability equal to the applicable limit of liability afforded by this policy. Insurance under this policy shall not be construed to be concurrent or contributing with any other insurance which is available to the insured.
 
 
 11
 Id., Exh. B at 37. Lexington's policy read as follows:
 
 
 12
 If other collectible insurance with any other insurer is available to the Insured covering a loss also covered hereunder, this insurance shall be in excess of, and shall not contribute with such other insurance. Excess insurance over the limits of liability expressed in this policy is permitted without prejudice to this insurance and the existence of such insurance shall not reduce any liability under this policy.
 
 
 13
 Id., Exh. C at 17.
 
 
 14
 After the Stephens filed suit, Safeco assumed the defense of both Owners and Towne. When it appeared that Towne might be found liable for an amount in excess of its coverage, Safeco began seeking contribution from Commercial Union and Lexington for the purpose of settling with the Stephens. It was ultimately agreed that Safeco would contribute $500,000 and Commercial Union $500,000 to a $1,000,000 settlement. This agreement was subject to two conditions. First, the insurers would file a declaratory judgment action to determine which insurer was primarily responsible for Towne's liability. Second, if it was determined that Safeco was not primarily responsible for Towne's liability, the issue of the proportional liability of the Owners[1] and Towne would be submitted to arbitration.
 
 
 15
 Two lawsuits followed. In the first, Towne sought a declaratory judgment concerning the responsibility of each of the insurers. In the second, Safeco sought a declaratory judgment that Commercial Union and Lexington were responsible. The district court consolidated the suits and the parties stipulated that there was no genuine issue of material fact precluding summary judgment. The court held that because the Commercial Union, Lexington, and Safeco policies all covered the same property and were purchased within five days of one another, there was a latent ambiguity regarding primary responsibility that justified the consideration of parol evidence on the contracting parties' intent. After considering that evidence, specifically the testimony of the agent who sold the Owners the Safeco policy and the Towne official who purchased the Commercial Union policy, the court concluded that the parties intended the Safeco policy to afford the primary coverage.
 
 
 16
 We cannot accept the district court's reasoning in this regard. Although Florida law allows courts to consider parol evidence in determining the parties' intent if a guaranty contract is truly ambiguous, see, e.g., Ace Electric Supply Co. v. Terra Nova Electric Co., 288 So.2d 544, 547 (Fla.Dist.Ct.App.1973), there is no support for the proposition that mere concurrent execution of insurance policies creates an ambiguity as to which insurer is primarily liable. Indeed, Florida law is quite clear that the parties' intent is to be measured solely by the language of the policies unless the language is ambiguous. See Durham Tropical Land Corp. v. Sun Garden Sales Co., 106 Fla. 429, 138 So. 21, 23 (1931) ("The intent of the parties to a contract is to be deduced from language employed, and such intention, when expressed, is controlling, regardless of intention existing in the minds of parties."); Hurley v. Werly, 203 So.2d 530, 537-38 (Fla.Dist.Ct.App.1967). Thus, to conclude from the mere fact that policies were entered into at approximately the same time that primary liability is uncertain is essentially to rely on parol evidence to justify the consideration of parol evidence, a circular form of reasoning we do not believe the Florida courts would accept. Cf. Continental Casualty Co. v. Weekes, 74 So.2d 367, 368 (Fla.1954) (to arbitrarily assign primary liability to an insurer and then find that a policy clause negating primary liability is inconsistent is improper circular reasoning).
 
 
 17
 This leaves us to examine the language of the Commercial Union, Lexington, and Safeco policies to determine whether the policies are ambiguous or conflicting with respect to the order of coverage. At least with respect to primary responsibility, it is clear that they are not. Commercial Union's policy states flatly that it extends "primary insurance" to the insured unless other parts of the policy state otherwise, and nowhere in the policy is there any other language calling Commercial Union's "primary" status into question. The Commercial Union policy also states that the insurer will remain primarily liable if the only other insurance applicable to the loss is "on an excess or contingent basis." In contrast to the Commercial Union policy, neither Safeco's nor Lexington's policy states that it is "primary insurance." To the contrary, Safeco's policy states that its coverage is contingent on the absence of other applicable insurance of any kind, except to the extent that the total liability facing the insured exceeds the combined coverage limits of all of the other insurance. The Florida courts have, on several occasions, recognized that this type of "escape clause" generally precludes any finding that an insurer is primarily liable if there is other collectible insurance. See Continental Casualty Co. v. Weekes, 74 So.2d at 369; Calder Race Course, Inc. v. Hialeah Race Course, Inc., 389 So.2d 215, 216 (Fla.Dist.Ct.App.1980); see also World Rent-a-Car v. Stauffer, 306 So.2d 131, 132 (Fla.Dist.Ct.App.1974). Likewise, Lexington's policy makes clear that it is an umbrella liability policy and extends only excess coverage if there is other collectible insurance. Thus, Commercial Union is primarily responsible, up to the $500,000 limit of its policy, for Towne's settlement with the Stephens.
 
 
 18
 The district court's alternative holding, that Safeco was primarily liable because its policy afforded "specific" coverage whereas Commercial Union's policy was of a "blanket" or "floating" nature,[2] does not alter our conclusion. For although it is true that the Florida courts have on occasion invoked this distinction,[3] they have never done so when a policy unambiguously stated that the coverage extended was primary or when third-party liability was involved. See Sucher v. Utica Mutual Insurance Co., 238 So.2d 687 (Fla.Dist.Ct.App.1970); Morgan v. Badger Mutual Insurance Co., 192 F.Supp. 249 (N.D.Fla.1961), aff'd, 313 F.2d 783 (5th Cir.1963); Balogh v. Jewelers Mutual Insurance Co., 167 F.Supp. 763 (S.D.Fla.1958), aff'd, 272 F.2d 889 (5th Cir.1959). It thus appears that the distinction is useful only when payments directly to an insured are involved[4] and when neither of two policies is clearly intended to be primary, an uncertainty not present here simply because Commercial Union chose to state clearly that it was affording primary coverage. Accordingly, Commercial Union is primarily liable. To hold otherwise would be to allow the insurer to avoid its express obligation in favor of some abstraction concerning the various types of insurance involved, a result we are convinced the Florida courts would not accept.
 
 
 19
 Having determined that Commercial Union is primarily responsible for Towne's liability, we must now decide which insurer is responsible for the remaining $500,000. As indicated above, Safeco's policy included what is commonly known as an "escape clause," stating that no coverage is extended unless and until all other collectible insurance has been exhausted. Lexington's policy extended umbrella liability coverage and contained what is commonly known as an "excess clause," stating that if other collectible insurance is available, Lexington is responsible only for any amount of liability in excess of the other insurers' coverage. A conflict arises because it would appear that each policy could serve as "other collectible insurance" sufficient to trigger the other's "other insurance" provision.
 
 
 20
 A recent Florida Supreme Court case, however, resolves the conflict. In Allstate Insurance Co. v. Executive Car & Truck Leasing, Inc., 494 So.2d 487 (Fla.1986), the court recognized that umbrella policies stand on a different footing when two "other insurance" clauses are in conflict. The court held that " 'umbrella coverages ... are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any manner, or escape clauses.' "[5] Id. at 489 (quoting J. Appleman, Insurance Law and Practice Sec. 4909.85 (1981)) (emphasis added). Because Lexington's policy was, by its terms, an umbrella liability policy, see Record, Vol. I, Exh. C at 1, Safeco's coverage must be extended first.
 
 
 21
 The district court's judgment that Safeco was exclusively responsible for Towne's liability is reversed, and the case is remanded for entry of judgment naming Commercial Union as the primary insurer and Safeco as the secondary insurer.
 
 
 22
 REVERSED and REMANDED.
 
 
 
 *
 Honorable Philip Nichols, Jr., Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 This case does not involve the insurers' responsibility for the Owners' liability, as it is undisputed that the Owners were insured only by Safeco
 
 
 [2]
 According to the court in Sucher v. Utica Mutual Insurance Co., 238 So.2d 687 (Fla.Dist.Ct.App.1970), " '[a] specific policy covers specific property, at a specific location for a specific amount and for a specific premium.' " Id. at 689 (quoting Morgan v. Badger Mutual Insurance Co., 192 F.Supp. 249, 251 (N.D.Fla.1961), aff'd, 313 F.2d 783 (5th Cir.1963)). A floating policy is, presumably, a policy in which one or more of these elements is missing. See Morgan, 192 F.Supp. at 251-52 (policies covering inventory that varied in quantity throughout the covered period were "classically floater type policies"). In light of our disposition of this issue, we express no opinion as to whether Commercial Union's policy could properly be classified as a blanket or floating policy
 
 
 [3]
 Contrary to Commercial Union's assertion, the court in State Farm Mutual Automobile Insurance Co. v. Universal Atlas Cement Co., 406 So.2d 1184 (Fla.Dist.Ct.App.1981), did not invoke the specific/floating distinction. The court's result turned on the fact that one of the two conflicting policies was an umbrella liability policy, extending coverage that was intended from the beginning to be excess. See id. at 1187. Umbrella coverage is not identical to floating coverage: it is entirely possible to have an umbrella policy that is nonetheless specific
 
 
 [4]
 Common sense suggests the reason for this limitation on the specific/floating distinction. How can a policy be specific with respect to compensation of an unknown third party?
 
 
 [5]
 Insofar as this passage addresses escape clauses and yet the case apparently did not involve any escape clauses, the statement is a dictum. Even so, when considering a diversity case under state law, we are bound to decide the case the way it appears the state's highest court would, and we would be violating that duty to ignore the fact that this statement was made