BENTON HOUSE, LLC., Appellant,

v.

COOK & YOUNTS INSURANCE, INC., and James E. Younts, Respondents.

No. WD 68052.

Missouri Court of Appeals,
Western District.

April 15, 2008.

Teresa Young, St. Louis, MO, for appellant.

Robert H. Houske, Kansas City, MO, for respondents.

Before VICTOR C. HOWARD, C.J., LISA WHITE HARDWICK, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Benton House, LLC, sued Cook & Younts Insurance, Inc., and James E. Younts[1] for negligence and breach of contract claiming that Younts had failed to procure the proper insurance for Benton House's business operations. The circuit court granted summary judgment in favor of Younts, and Benton House appeals. Benton House asserts that the circuit court erred in concluding that Benton House sustained no damages resulting from Younts's failure to procure insurance coverage. We affirm the circuit court's judgment.

When considering appeals from summary judgments, we review the record in the light most favorable to the nonmoving party, and we afford that party the benefit of all reasonable inferences. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). The record established that Younts procured a commercial liability insurance policy from Essex Insurance Company on behalf of Benton House. The Essex policy contained a Classification Limitation Endorsement, which said: "The coverage provided by this policy applies only to those operations specified in the application for insurance on file with the company and described under the 'description' or 'classification' on the declarations of the policy." The Commercial Property Coverage Part Declarations identifies Benton House's business description as "Office Rentals" and provides a description of the premises as "3 Story Masonry Occupied as Office Buildings."

At the time when Younts procured the Essex policy, Benton House was using its building as an office building. In April 2003, Benton House began using its build-

---

1. We refer to Cooks & Younts Insurance, Inc., and James E. Younts collectively as Younts.

ing as a residential care facility. In September 2003, Benton House notified Younts that it was operating as a residential care facility and that it had residents at its facility. Younts thereafter began attempting to procure a professional liability policy on behalf of Benton House.

On October 18, 2003, Augustine Montgomery died while a resident of Benton House. Following the death of Montgomery, Dennis Goodden, an attorney for Montgomery's heirs, sent a demand letter informing Benton House that his clients were pursuing a wrongful death and survivor's claim against Benton House and requesting that Benton House's insurer settle all claims for the policy limits of one million dollars.

In response to the demand letter, Essex sent a reservation of rights letter to Benton House. However, before Montgomery's heirs filed a lawsuit against Benton House, Essex settled the claim for $500,000. In conjunction with the settlement, Essex entered into an Advance Agreement with Benton House, wherein Benton House agreed that the payment of $500,000 to Montgomery's heirs may have to be repaid under certain circumstances. The Advance Agreement provided in part:

Benton House, James Gamble and Judy Chase[2] agree that the advance may be repayable to Essex Insurance Company in the event of:

1. A determination that James Gamble and/or any representative of Benton House **did not** inform and/or tell James Younts and/or representatives of Cook & Younts Insurance Inc, prior to the date of the death of Augustine Montgomery Sr., that Benton House had

changed it's [sic] business operation to that of one of accepting residential care patients;

2. A determination that James Gamble and/or any representatives of Benton House **did not** rely on and follow the advice and counsel of James Younts and/or Cook and Younts Insurance Inc with respect to insurance issues, specifically whether a new insurance policy should be obtained or an existing insurance policy should be revised in light of the fact that Benton House was accepting residential care patients, or

3. Any recovery by Benton House, James Gamble and Judy Chase pursuant to any action, cause of action, demand and/or claim made upon Cook & Younts Insurance Inc, James Younts, Cook & Younts Insurance Inc. representatives and/or Cook & Younts Insurance Inc.'s insurer with respect to insurance coverage.[3]

Although Essex agreed to pay Montgomery's heirs $500,000, Essex noted in the Advance Agreement that no coverage existed under its insurance policy issued to Benton House for "the claim asserted that arose out of the death of Augustine Montgomery Sr."

Thereafter, on January 21, 2005, Benton House filed a petition against Younts for negligence and breach of contract alleging that Younts failed to procure the proper insurance for Benton House's business operations. Benton House and Younts filed cross-motions for summary judgment. The circuit court entered summary judgment for Younts. The circuit court found that, because Essex voluntarily settled the Montgomery claim, Benton House was un-

---

**2.** James Gamble is an equal owner of Benton House with his partner, Judy Chase.

**3.** It appears to this Court that, although identified as a "security payment," the Advance

Agreement essentially operated as a de facto assignment of Benton House's chose in action against Younts.

der no obligation to reimburse Essex for the settlement. The circuit court, therefore, concluded that Benton House had suffered no damages and could not maintain a claim against Younts. Benton House appeals.

Benton House contends that the circuit court erred in concluding that Benton sustained no damages resulting from Younts's failure to procure insurance coverage for Benton House's operation of a residential care facility. Benton House asserts that the material undisputed facts and the law show that it sustained damage from Younts's failure to procure insurance because (1) Benton House remains liable to Essex for the sums that Essex paid in the Montgomery settlement, (2) Essex paid the Montgomery claim under duress and, therefore, did not waive its right to seek reimbursement from Benton House, and (3) the Essex policy did not cover the Montgomery wrongful death claim.

We review the circuit court's granting of a summary judgment de novo. *ITT Commercial*, 854 S.W.2d at 376. "The propriety of summary judgment is purely an issue of law." *Id.* Because the circuit court's judgment is based on the record submitted and the law, we need not defer to the circuit court's order granting summary judgment. *Id.* We will affirm the circuit court's grant of summary judgment if no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Id.* at 380; Rule 74.04(c)(6).

■ The circuit court correctly concluded that Benton House sustained no damages resulting from Younts's failure to procure insurance coverage. First, under the terms of the Advance Agreement, we fail to see how Benton House remained exposed to liability to Essex for the money that Essex paid to settle the Montgomery claim. Essex is entitled to repayment if Benton House has any recovery "pursuant to any action, cause of action, demand and/or claim made upon" Younts with respect to insurance coverage. This provision does not give Essex the right to file an action against Benton House to seek repayment. Essex can only recover if Benton House recovers anything in an action against Younts. Moreover, the other provisions in the Advance Agreement, which purportedly give rise to Benton House's obligation to repay, merely appear to be calculated to ensure that Benton House's testimony on its claim against Younts remains consistently favorable.

■ Second, to prevail on its claims for negligence and for breach of contract, Benton House had to show that it suffered damages. *See Ostrander v. O'Banion*, 152 S.W.3d 333, 338 (Mo.App.2004), and *Shirley's Realty, Inc. v. Hunt*, 160 S.W.3d 804, 807 (Mo.App.2005). In this case, Benton House suffered no damages from Younts's failure to procure insurance coverage for Benton House's operation of a residential care facility because Benton House's insurer, Essex, settled the Montgomery claim. In light of Essex's voluntary payment of the claim, Missouri law prohibits Essex from seeking reimbursement from Benton House, its own insured, for the money paid to settle the claim. Indeed, as this court said in *American Motorists Insurance Co. v. Shrock*, 447 S.W.2d 809, 811–12 (Mo. App.1969):

"It is a universally recognized rule that money voluntarily paid under a claim of right to the payment, and with knowledge of the facts by the person making the payment, cannot be recovered back on the ground that the claim was illegal, or that there was no liability to pay in the first instance. This is true even though the payor makes the payment and expressly reserves his right to litigate his claim, or under protest, or un-

der the impression that the demand was legal." Missouri courts have uniformly followed that rule since 1868 when the Supreme Court first applied it in *Claflin v. McDonough*, 33 Mo. 412, stating: "The rule of law is well established, both in England and in this country, that a person who voluntarily pays money with full knowledge of all the facts in the case, and in the absence of fraud and duress, cannot recover it back, though the payment is made without a sufficient consideration, and under protest." With specific reference to the law of insurance, it is considered by standard authority that payment by the insurer, with knowledge of facts to support a policy defense, amounts to a *waiver* of its right to rely thereupon or to recover the payment made.

*Id.* at 811–12 (citation omitted); *see also* 22 Eric Mills Holmes, HOLMES' APPLEMAN ON INSURANCE 2d § 137.1(E) (2003).

Prior to settling the Montgomery claim, Essex never declined or denied coverage to Benton House for the Montgomery claim. Moreover, Essex was aware that it had an option of filing a declaratory judgment action to obtain a determination as to whether or not coverage existed under Benton House's policy for the Montgomery claim, but Essex chose not to pursue such an action. Essex, therefore, voluntarily paid the Montgomery claim on behalf of Benton House with full knowledge of the policy defenses available to it and of its option to seek a declaratory judgment action.

■ Moreover, although Essex issued a reservation of rights letter and tried to reserve its right to seek repayment from Benton House through the "Advance Agreement," such reservations do not allow an insurer the right to seek repayment from its insured for claims voluntarily paid. "No right of subrogation can arise in favor of an insurer against its own insured, since, by definition, subrogation arises only with respect to rights of the insured against third persons to whom the insurer owes no duty." *Jos. A. Bank Clothiers, Inc. v. Brodsky*, 950 S.W.2d 297, 303 (Mo.App.1997); *see also Sherwood Med. Co. v. B.P.S. Guard Servs., Inc.*, 882 S.W.2d 160, 162 (Mo.App.1994) ("[A]n insurer cannot seek subrogation from its insured."). Subrogation arises generally when a first party insurer pays its insured's property loss and, thereby, acquires its insured's right to pursue any third party who may have occasioned loss. It is inapplicable to a liability insurer as in the case at bar. "An insurer," therefore, "must make a hard decision in determining whether to defend when a coverage issue exists. If the decision concerning coverage is wrong the insurance company should be bound by its decision." *Borgard v. Integrated Nat'l Life Ins. Co.*, 954 S.W.2d 532, 535 (Mo.App.1997) (citation omitted).

■ Benton House asserts, however, that Essex acted under duress and did not voluntarily settle the Montgomery claim. Indeed, "a volunteer who pays money, in the absence of fraud or duress, is not entitled to the return of his money." *Commercial Union Ins. Co. of New York v. Farmers Mut. Fire Ins. Co.*, 457 S.W.2d 224, 226 (Mo.App.1970). Benton House, therefore, argues that a volunteer who pays money under duress is entitled to the return of the money.[4]

---

4. This Court remains puzzled as to how money paid to Montgomery might be recoverable from Benton House.

■ "The central question with respect to duress is whether, considering all the surrounding circumstances, one party to the transaction was 'prevented from exercising his free will by the threats or wrongful conduct of the other.'" *Andes v. Albano*, 853 S.W.2d 936, 942 (Mo. banc 1993) (quoting *McCandlish v. Linker*, 231 S.W.2d 162, 164 (Mo.1950)). "A claim of duress cannot generally be sustained where there is knowledge of the facts and opportunity for investigation, deliberation and reflection." *Aurora Bank v. Hamlin*, 609 S.W.2d 486, 488 (Mo.App.1980) (citing *Weisert v. Bramman*, 358 Mo. 636, 216 S.W.2d 430, 434 (1948)). The undisputed facts show that Essex did not pay the Montgomery claim under duress. Essex reviewed the demand letter, conducted an investigation, reviewed the insurance policy, and settled the claim. No threats or wrongful conduct prevented Essex from exercising its free will.

■ Benton House also claims that an insurer does not become a voluntary payor simply by settling a claim. In support of its contention it relies on an opinion by this court's Eastern District, *Utility Service & Maintenance, Inc. v. Noranda Aluminum, Inc.*, No. ED82504, 2004 WL 1877916 (Mo. App. E.D. August 24, 2004),[5] which was subsequently transferred to the Missouri Supreme Court. In its decision, the Missouri Supreme Court did not discuss the issue of whether or not an insurer is a voluntary payor simply by settling a claim. *Util. Serv. & Maint., Inc. v. Noranda Aluminum, Inc.*, 163 S.W.3d 910 (Mo. banc 2005). Thus, to the extent that Benton House relies on the Eastern District's opinion, it is relying on a ruling with no precedential value. "The decision of the court of appeals in a case subsequently transferred is of no precedential effect." *Philmon v. Baum*, 865 S.W.2d 771, 774 (Mo.App.1993).

■ Moreover, while an insurer may recover amounts paid under a mistake of fact, it may not recover for amounts paid under a mistake of law. *Mo. Ins. Guar. Ass'n v. Wal–Mart Stores, Inc.*, 811 S.W.2d 28, 34 (Mo.App.1991);[6] *see also* 16 Lee R. Russ & Thomas F. Segalla, COUCH ON INSURANCE 3d § 226:56 (2000). Two exceptions exist to this general rule: (1) "restitution will be granted to remedy a payment made because of a mistake of law if the surrounding facts raise an independent equity, as when the mistake is induced, or is accompanied by inequitable conduct of the other party," and (2) "restitution will not be granted to remedy a mistake of fact if the payee has so changed his position that it would be unjust to require restitution." *W. Cas. & Sur. Co. v. Kohm*, 638 S.W.2d 798, 800 (Mo.App.1982).[7] The payment made un-

**5.** Benton House also relies on *Iowa State Insurance Co. v. Missouri Southern Railroad Co.*, 223 Mo.App. 148, 9 S.W.2d 255 (1928) and *United Services Automobile Ass'n v. United States Fidelity & Guaranty Co.*, 555 S.W.2d 38 (Mo.App.1977), in support of its contention that an insurer does not become a voluntary payor simply by settling a claim. The *Iowa State Insurance* case, however, concerned a company's right of subrogation after it paid a fire claim, and the *United Services Automobile* case concerned an action between insurers to determine which carrier was primarily responsible for a loss. These cases did not concern an insurer's right to seek repayment from its own insured for a claim that the insurer voluntarily paid to a third party.

**6.** Benton House also relies on this case in support of its contention that an insurer does not become a voluntary payor simply by settling a claim. This case, however, concerned a mistake of fact. In such cases, an insurer may recover amounts paid to an insured under a mistake of fact.

**7.** Benton House correctly points out that the *Kohm* court stated that "restitution should be granted 'whenever a person has received money which in equity and good conscience

der this case might have been a mistake of law, but it was not made because of a mistake of fact.[8] Further, Benton House does not contend that anyone induced Essex to make a mistaken payment.

Missouri law, therefore, prohibits Essex from seeking subrogation from its own insured, and, further, prohibits Essex from seeking repayment from Benton House because Essex voluntarily paid the Montgomery claim on behalf of its insured, Benton House.[9] The circuit court correctly concluded that Benton House sustained no damages resulting from Younts's failure to procure insurance coverage. We, therefore, affirm the circuit court's granting summary judgment in favor of Younts.

All concur.

belongs to and should be paid to another.' " 638 S.W.2d at 800 (citation omitted). The *Kohm* court, however, also said that "[i]t is still necessary to consider the nature of the mistake, the circumstance under which it was made, the conduct of the payee, and so on, insofar as these factors indicate whether it would be 'unjust' to permit retention of the benefit." *Id.*

8. Recall, nothing was paid in error, or otherwise, to Benton House that Essex seeks to recover. Essex paid money to one with a claim against Benton House ostensibly pursuant to its obligations assumed under a contract of insurance.

9. Because we reach this conclusion we need not address Benton House's contention that the insurance policy issued by Essex did not cover the Montgomery wrongful death claim.