# United States Court of Appeals
### For the Eighth Circuit

_____

No. 15-1927
_____

Susan DeCoursey

*Plaintiff - Appellant*

v.

American General Life Insurance Company

*Defendant - Appellee*

_____

No. 15-1929
_____

Susan DeCoursey

*Plaintiff - Appellee*

v.

American General Life Insurance Company

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: March 17, 2016
Filed: May 17, 2016

_____

Before WOLLMAN, ARNOLD, and SHEPHERD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

This case arises out of a dispute over a life insurance policy. When Susan DeCoursey sued American General Life Insurance Company (the company) for interest she claimed it owed her on a payout it made on a policy, the company counterclaimed, asking for its money back because it had paid DeCoursey by mistake and so DeCoursey was not entitled to the payout in the first place, let alone interest. After the district court granted the company summary judgment on DeCoursey's claims and granted her summary judgment on the company's counterclaim, both parties appealed.

In 1985, DeCoursey's husband purchased a $250,000 life insurance policy from the company's predecessor in interest. In August 1986, DeCoursey's husband and son died in a car accident. She submitted a claim on the policy, but her claim was denied because the policy had lapsed. DeCoursey took no further action. In June 2011, the company began an effort to determine if any life insurance beneficiaries had failed to notify it of an insured's death and were thus owed life insurance benefits. The company did so by reviewing Social Security Administration death records. The company may have undertaken this effort because of media and regulatory scrutiny of the life-insurance industry as well as pressure from states seeking to catalyze review of dormant policies in the hope that unclaimed payouts might eventually escheat to them.

As a result of the review, the company notified DeCoursey that she was entitled to benefits under the policy because the policy did not lapse until three months after her husband died, and so it paid her the policy's face value, $250,000, in January 2013. Unsatisfied, DeCoursey demanded that the company pay her 9% interest from the time it denied her claim in 1986. The company refused, maintaining that it owed her no interest because it had paid her the face value of the policy within 30 days after her renewed request for payment. *See* Mo. Code Regs. Ann. tit. 20, § 100-1.050(1)(H). The company's refusal prompted DeCoursey to file a complaint with the Missouri Department of Insurance (MODI). After it received a copy of the complaint, the company began investigating the policy more closely. Much of the information relating to the policy had been discarded, but the company discovered, after an exhaustive search of its records, that the policy had indeed lapsed nine days before DeCoursey's husband died.

The company then notified DeCoursey that it had erroneously paid her $250,000 because the policy had lapsed before her husband died, but it nonetheless offered to settle her claim by allowing her to keep the $250,000 along with an additional $25,000. DeCoursey declined the offer and instead filed an action in a Missouri state court that made numerous claims, including, as relevant here, ones for vexatious refusal to pay, unpaid statutory interest, breach of contract, and unjust enrichment. The company removed the case to federal court and counterclaimed for unjust enrichment.

The company then moved for summary judgment on DeCoursey's claims, asserting that DeCoursey had failed to bring suit within the limitations period. The district court agreed, holding that DeCoursey did not bring suit until after the ten-year limitations period had expired. The district court granted DeCoursey's motion for summary judgment on the company's counterclaim, holding that the company had voluntarily paid DeCoursey $250,000 because it "put forth no evidence to suggest that

-3-

it did not have the opportunity to diligently investigate the Policy before it was paid out."

We address DeCoursey's appeal first. She contends that her claims did not accrue until 2013 when she learned that the company's records indicated that the policy did not lapse until November 1986. The parties agree that Missouri law controls in this diversity case, *see Midwestern Indem. Co. v. Brooks*, 779 F.3d 540, 544–45 (8th Cir. 2015), and that a ten-year limitations period applies. *See* Mo. Rev. Stat. § 516.110(1). Under Missouri law, a limitations period begins to run when a cause of action accrues, which is "when the damage resulting [from a wrong or the breach of contract or duty] is sustained and is capable of ascertainment." Mo. Rev. Stat. § 516.100. In other words, claims accrue "when the evidence was such to place a reasonably prudent person on notice of a potentially actionable injury," and at this point the plaintiff is obliged to discover potential damages and to seek redress. *Huffman v. Credit Union of Tex.*, 758 F.3d 963, 967–68 (8th Cir. 2014). Importantly, "[d]amage is ascertainable when the fact of damage can be discovered or made known, not when the plaintiff actually discovers injury or wrongful conduct." *Id.* at 967. We have recognized that Missouri courts applying these principles have routinely held that insurance-dispute claims accrue when the plaintiff receives notice that a claim was denied. *See Brown v. CRST Malone, Inc.*, 739 F.3d 384, 388 (8th Cir. 2014).

DeCoursey fails to demonstrate how her claims can escape the general rule and accrue when she received notice of her claim's denial. Her argument that she did not learn of the allegedly wrongful basis for her claim's denial until 2013 makes no difference under Missouri law because accrual does not turn on when the plaintiff "discovers injury or wrongful conduct." *Huffman*, 758 F.3d at 967. In fact, the Missouri Supreme Court recently overturned the very decision of the Missouri Court of Appeals upon which DeCoursey relies for the proposition that the limitations statute begins to run when the wrongful conduct is discovered. *See Boland v. Saint Luke's Health Sys., Inc.*, 471 S.W.3d 703 (Mo. 2015) (en banc). Since DeCoursey's

claims accrued in 1986, the ten-year limitations period bars the claims she brought in 2013.

DeCoursey also maintains that, even if her claims accrued in 1986, the limitations period was tolled when the company paid her the policy's face value. Partial payment of a debt will generally toll a limitations period because it acknowledges the debt and carries an implied promise to pay the remaining balance. *Heidbreder v. Tambke*, 284 S.W.3d 740, 746–47 (Mo. Ct. App. 2009). "Where nothing appears to show a contrary intention, the payment alone prevents the statute from barring the claim." *Id.* at 747. Tolling also prevents a debtor from lulling a creditor into a limitations bar. *Id.* at 748.

Even if partial payment could restart, rather than merely toll, a limitations period, a proposition by no means obvious, *see Corrales v. Murwood, Inc.*, 232 S.W.3d 609, 612 (Mo. Ct. App. 2007), the company's repeated refusal to pay interest is completely inconsistent with an implied promise to pay the remainder of the alleged debt. DeCoursey admitted that the company explicitly refused to pay her interest even before it paid her the face value of the policy and continued to do so thereafter. And payment of the policy's face value did not lull DeCoursey into a limitations bar because the bar was in place years before the payment. The company's payment therefore did not toll or restart the limitations period.

DeCoursey further contends that a written acknowledgment of a promise to pay interest that a company employee executed tolled the limitations period. The acknowledgment at issue stemmed from a telephone conversation between representatives from the company and MODI: The company representative wrote in her notes from the call that she confirmed that the company would pay interest and that DeCoursey was entitled to the policy's face value.

-5-

But Missouri law provides that no acknowledgment of a debt or promise to pay a debt "shall be evidence of a new or continuing contract, whereby to take any case out of the [statute of limitations] or deprive any party of the benefit thereof, unless such acknowledgment or promise be made or contained by or in some writing subscribed by the party chargeable thereby." Mo. Rev. Stat. § 516.320. Whether an acknowledgment removes a contract from the statute of limitations is a question of law. *Millington v. Masters*, 96 S.W.3d 822, 831 (Mo. Ct. App. 2002).

We reject DeCoursey's argument for two reasons. In the first place, the note was never delivered to her and Missouri courts have found a delivery requirement implicit in § 516.320. *See, e.g.*, *id.* at 831. Where the acknowledgment is not delivered to the creditor or prepared for her, it cannot toll the limitations period. *Id.* We disagree with DeCoursey's contention that the matter of delivery is merely a consideration in determining whether the acknowledgment contains a vague or uncertain promise. Missouri courts have regarded the question of delivery as distinct from the question of vagueness, *see id.*, and anyway we cannot see how delivery of an acknowledgment can shed any light on its meaning. Here, the note was not given to DeCoursey or even to MODI, and it was not prepared for DeCoursey's benefit; therefore, under Missouri law, it cannot toll or restart the limitations period.

Missouri courts, moreover, have strictly construed § 516.320's requirement that the acknowledgment be "subscribed by the party chargeable thereby." To be "subscribed," "the person must write his or her name underneath the writing in question," and "[t]he text of the writing must be followed by the handwritten signature of the person." *Flowers v. McDonald Cnty.*, 195 S.W.3d 434, 439 (Mo. Ct. App. 2006). The acknowledgment here contains no signature: It contains only the author's typewritten name at the top of the page. There is no error here.

We likewise reject DeCoursey's derivative argument that the limitations period did not bar a second vexatious-refusal claim that accrued in 2013 when the company

refused her demand for interest. We agree with the district court that DeCoursey pleaded only one vexatious-refusal claim, which was based on the events surrounding her claim's denial in 1986.

DeCoursey's last argument is that the company's fraudulent concealment tolled the limitations period. For fraudulent concealment to toll a limitations period, "there must be something of an affirmative nature designed to prevent, and which does prevent, discovery of the cause of action." *Owen v. Gen. Motors Corp.*, 533 F.3d 913, 920 (8th Cir. 2008). Silence does not suffice unless accompanied by a duty to speak. *Id.*

DeCoursey does not identify any affirmative fraudulent acts on the company's part or tell us why it had a duty to speak. She appears to assume that any error in paying her claim necessarily stems from fraudulent, wrongful conduct rather than from mistake. But the record contains nothing tending to show that the company concealed a fact that prevented DeCoursey from asserting her claims after learning of coverage denial in 1986. We therefore reject DeCoursey's argument that fraudulent concealment tolled the limitations period and hold that the district court correctly found that DeCoursey's claims were untimely.

On cross-appeal, the company maintains that the district court erred in concluding that its voluntary payment of the policy amount defeats its counterclaim for unjust enrichment. Such a claim is appropriate "when one party has been unjustly enriched through the mistaken payment of money by the other party." *Inv'rs Title Co., Inc. v. Hammonds*, 217 S.W.3d 288, 293 (Mo. 2007) (en banc). This restitutionary claim arises when a defendant possesses money that in equity and good conscience belongs to the plaintiff. *Id.* at 293–94.

The company contends that, at the time it paid DeCoursey the face value of the policy, it mistakenly believed that she had never submitted a claim on her husband's

policy and that the policy was in effect at his death. The district court apparently assumed for summary judgment purposes that the company's claimed mistakes were genuine, but it concluded that the company "put forth no evidence to suggest that it did not have the opportunity to diligently investigate the Policy before it was paid out" and so paid it voluntarily. In reaching this conclusion, the district court relied on a decision from the Missouri Court of Appeals that determined that when an insurer has paid with full knowledge of the facts or "an unlimited opportunity to become informed of the facts," the insurer may have waived any defense it had to a claim. *See Sentry Ins. v. Knox*, 360 S.W.3d 846, 849 (Mo. Ct. App. 2011).

*Sentry*, though it relied on a restitution case, might well be inapposite here, but it is in any case an outlier at best. There are numerous Missouri cases that undermine the district court's reliance on *Sentry*. The Missouri Court of Appeals has held that "a payor's lack of care will not diminish his right to recover, or somehow justify retention of the windfall by an unintended beneficiary." *W. Cas. & Sur. Co. v. Kohm*, 638 S.W.2d 798, 801 (Mo. Ct. App. 1982). Even where the mistake "is due solely to lack of care by the payor," restitution will lie because the payee is not entitled to a windfall. *Pitman v. City of Columbia*, 309 S.W.3d 395, 404 (Mo. Ct. App. 2010). This is true, for instance, when the payor's mistake of fact could have been discovered had it reviewed records available to it. *Hertz Corp. v. RAKS Hosp., Inc.*, 196 S.W.3d 536, 544 (Mo. Ct. App. 2006). In *Kohm*, an insurer's mistaken payment to an insured did not justify allowing the insured to keep the payment, apparently despite the insurer's constructive knowledge of the terms of its insurance policy. *Kohm*, 638 S.W.2d at 801. The court explained that "if a consumer, despite having adequate financial records, carelessly overpaid his insurance premium, he would certainly be entitled to reclaim the money despite the fact that he had been negligent in sending it." *Id.*

The tendency of the cases in the Missouri Court of Appeals is therefore quite plain. When interpreting state law, however, we are bound only by decisions of the highest state court, and when the highest state court has not decided an issue we must

attempt to predict how it would. *Allstate Indem. Co. v. Rice*, 755 F.3d 621, 623–24 (8th Cir. 2014). While decisions of the Missouri Court of Appeals are persuasive evidence of Missouri law, *see id.* at 624, they are not controlling and here they may even be conflicting.

We are confident that the Missouri Supreme Court would decide that "a payor's lack of care will not diminish his right to recover, or somehow justify retention of the windfall by an unintended beneficiary." *See Kohm*, 638 S.W.2d at 801. This result comports with the relevant Restatement, which explains that the so-called voluntary-payment rule does not "impute knowledge of relevant circumstances of which the payor is not in fact aware, describing as 'voluntary' a payment that was actually the consequence of negligence or inadvertence." Restatement (Third) of Restitution & Unjust Enrichment § 6 cmt. e. Instead, a "voluntary" payment that will defeat a restitutionary claim "normally occur[s] in the context of a payment made to settle a claim. Where the terms of settlement involve an explicit compromise of an uncertain liability, the contractual mechanism by which a risk of uncertainty is allocated to the payor is transparent." *Id.* Here, on the other hand, the company's payment of the face value of the policy did not involve an explicit compromise allocating the risk to the company that DeCoursey might not in fact be entitled to the face value of the policy. Instead, if we accept the company's version of the facts, as we must on summary judgment, *see Mahanna v. U.S. Bank Nat'l Ass'n*, 747 F.3d 998, 1001 (8th Cir. 2014), the parties did not explicitly contemplate this risk until after the company's deeper investigation into its liability on the policy following DeCoursey's demand for interest.

The Restatement explains that "where the parties have not recognized that coverage is doubtful, an insurer's mistake as to the fact or extent of insurance coverage yields a straightforward claim in restitution." Restatement (Third) of Restitution & Unjust Enrichment § 6 cmt. f(1). A Restatement illustration drives home the point: "A's life is insured with B Company under a term policy. C is the named beneficiary.

Receiving proof of A's death, B pays C. Unknown to B or C, A's policy had lapsed prior to death for nonpayment of premiums. B has a claim in restitution against C." *Id.* at cmt. f(1), illus. 23. We think that the Missouri Supreme Court would find the Restatement's guidance persuasive, especially since that court frequently regards Restatements as authoritative in general, *see, e.g.*, *Humphrey v. Glenn*, 167 S.W.3d 680, 684 (Mo. 2005) (en banc), and has relied on an earlier version of the Restatement on Restitution in particular. *See Strype v. Lewis*, 180 S.W.2d 688, 691–92 (Mo. 1944).

Our conclusion is consistent with the settled principles of restitution law. A claim for restitution lies "when one party has been unjustly enriched through the mistaken payment of money by the other party." *Hammonds*, 217 S.W.3d at 293. We cannot see why a payor's negligence should estop it from asserting that its mistakes of fact resulted in a payment of money that was not due. There is no connection between the payor's negligence and the voluntary-payment rule. Mistakes are often the result of negligence, and if a restitution claim were barred because the plaintiff was negligent, the voluntary-payment exception would bid fair to swallow a large part of the general restitutionary rule. We find altogether persuasive the observation in *Kohm* that if the shoe were on the other foot, a court would have no trouble whatsoever in concluding that a negligent insured would be entitled to restitution for mistaken premium payments. In short, the company has a perfectly straightforward claim for restitution here. The district court therefore erred in holding that the company's counterclaim failed because it neglected to discover all of the relevant facts.

We affirm the district court's grant of summary judgment to the company on DeCoursey's claims but reverse the district court's grant of summary judgment to DeCoursey on the company's counterclaim and remand for further proceedings.

_____