# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1886

_____

Tim Mackey; John Nesse, as Trustees of the Minnesota Laborers Health and
Welfare Fund,

*Plaintiffs - Appellees*,

v.

Terri Lynn Johnson, as Trustee for the Heirs and Next of Kin of Timothy M.
Scherf; Meshbesher & Spence, Ltd.,

*Defendants - Appellants*,

The Duluth Clinic, Ltd., doing business as Essentia Health Deer River Clinic,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the District of Minnesota - Minneapolis

_____

Submitted: February 9, 2017
Filed: August 22, 2017

_____

Before LOKEN, COLLOTON, and KELLY, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Terri Johnson brought a wrongful-death action against the Duluth Clinic, alleging that the Clinic was negligent in its treatment of her brother's lung cancer. Johnson's brother was a participant in the Minnesota Laborers Health and Welfare Fund, and the Fund paid for his medical treatment. Johnson settled her claim with the Clinic. The Fund then sued Johnson, her legal counsel Meshbesher & Spence, and the Clinic under the Employee Retirement Income Security Act, 29 U.S.C. § 1132(a)(3). The Fund alleged that it had a right to a portion of the settlement attributable to medical expenses. The district court[1] agreed and granted summary judgment for the Fund in the amount of $236,700.16. Johnson and Meshbesher challenge the ruling, but we reject their arguments and affirm the judgment.

I.

In March 2010, Timothy Scherf was admitted to the Duluth Clinic with chest pressure. A chest x-ray revealed a "12mm nodular opacity." Although the x-ray report recommended a CT scan of Scherf's chest, Scherf alleged that he was not informed of the abnormality or the need for follow-up tests. In October 2011, Scherf was diagnosed with Stage IV lung cancer and began treatment. Scherf was a participant in the Minnesota Laborers Health and Welfare Fund. Under the Fund's Plan, the Fund paid for Scherf's medical treatment. The Plan also stated that if the Fund provided medical benefits on behalf of a plan participant, and the participant recovered payment for those benefits from a third party, then the Fund had a first priority subrogation interest in that payment.

---

[1]The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

In March 2012, Scherf hired Meshbesher & Spence to bring a medical negligence claim against the Clinic. Meshbesher notified the Fund of the potential claim. The Fund responded with a letter asserting a first priority right of subrogation under the Plan, and later sent a subrogation agreement. Scherf and Johnson, who had been given power of attorney over Scherf's affairs, signed the subrogation agreement and affirmed the Fund's subrogation right. In August 2012, Scherf died from lung cancer. The Fund presented undisputed evidence that it paid $236,700.16 for Scherf's treatment.

Johnson, represented by Meshbesher, commenced a wrongful-death action against the Clinic on behalf of Scherf's heirs and next of kin, seeking damages under Minnesota's wrongful-death statute. *See* Minn. Stat. § 573.02. Before a mediation, Johnson provided the mediator with a letter outlining the relevant facts and a summary of potential liability and damages. The "Damages" section of the letter included "Medical Expenses: $220,108.06 (subrogation interest asserted by the Minnesota Laborers Health & Welfare Fund – a self-funded ERISA Plan)." The letter also included claims for funeral expenses ($4,178.66), lost earnings ($337,000), and "[l]ost advice, comfort, support, protection, companionship, etc." (amount "[t]o be determined").

During mediation, Meshbesher took the position that the Fund had no subrogation interest in Johnson's wrongful-death claim, and that the Clinic was "offering nothing with respect to the med expenses." The Fund responded that it disagreed, "especially in light of the fact that you have included a claim for medical expenses," and it provided a copy of the Plan's subrogation provision. Meshbesher replied: "Actually, for purposes of this mediation, we are not including the claim for medical expenses. As I told you, the defenses [*sic*] position is that we have no obligation to repay your client a penny. So medical expenses are not part of this mediation."

Johnson and the Clinic ultimately reached a settlement agreement. The agreement provided that "[t]his settlement includes all applicable medical liens and subrogation claims." A handwritten note on the settlement agreement stated: "Claimants deny that [the] Fund is entitled to any portion of the settlement proceeds." A few months later, the parties executed a more detailed settlement agreement and release. The release discharged the Clinic from "any claims, actions, causes of action and assertions of liability of every type on account of, or in any way arising out of, any and all injuries and damages, known or unknown . . . suffered or sustained by [Johnson] as a result of the medical care and treatment" rendered to Scherf by the Clinic from March 2010 to August 2012. The settlement agreement also provided that Johnson "acknowledges that [the Fund] has asserted a lien and/or subrogation claim for certain medical expenses," and that she "represents, warrants and agrees that she will satisfy [the Fund's] subrogation rights, if any, as determined by a court of competent jurisdiction."

After the settlement, the Fund sued Johnson, Meshbesher, and the Clinic under ERISA, alleging that Johnson had failed to reimburse it for $236,700.16 that the Fund paid for Scherf's medical expenses. The Fund moved for summary judgment and argued that it was entitled to the medical expenses included in the settlement proceeds under the terms of the Plan and the subrogation agreement. The district court agreed and granted summary judgment for the Fund in the amount of $236,700.16. We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in the light most favorable to Johnson and Meshbesher. *Malloy v. U.S. Postal Serv.*, 756 F.3d 1088, 1090 (8th Cir. 2014).

II.

Johnson and Meshbesher devote much of their argument to whether a wrongful-death trustee can recover medical expenses in a wrongful-death action under Minn.

Stat. §§ 573.01 and 573.02.[2]  We think this issue is beside the point.  A settlement agreement is a contract.  *Dykes v. Sukup Mfg. Co.*, 781 N.W.2d 578, 581 (Minn. 2010).  Minnesota public policy favors the freedom of contract, *see Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 545 (Minn. 2014), and parties can contract to settle any claim, even if the claim has little support in the law.  Here, Johnson had at least a colorable argument based on the statutory text of Minn. Stat. §§ 573.01 and 573.02 that she was entitled to recover Scherf's medical expenses.  The statutes allow for a wrongful-death trustee to bring an action if the decedent could have brought an action for an injury caused by the alleged wrongful act.  This at least suggests that the trustee could bring an action that includes a claim for the decedent's medical expenses.  *See Prescott v. Swanson*, 267 N.W. 251, 258 (Minn. 1936) (rejecting argument that medical expenses were not recoverable by next of kin in a wrongful death action under predecessor statute with comparable text); *see also* Ashley N. Biermann, Note, *The Practical Effects of* Dickhoff v. Green *on Wrongful*

---

[2]Minn. Stat. § 573.01 provides that a "cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as provided in section 573.02."  Minn. Stat. § 573.02, subd. 1. provides:

> **Death action.**  When death is caused by the wrongful act or omission of any person or corporation, the trustee appointed as provided in subdivision 3 may maintain an action therefor if the decedent might have maintained an action, had the decedent lived, for an injury caused by the wrongful act or omission. . . .  The recovery in the action is the amount the jury deems fair and just in reference to the pecuniary loss resulting from the death, and shall be for the exclusive benefit of the surviving spouse and next of kin, proportionate to the pecuniary loss severally suffered by the death.  The court then determines the proportionate pecuniary loss of the persons entitled to the recovery and orders distribution accordingly.  Funeral expenses and any demand for the support of the decedent allowed by the court having jurisdiction of the action, are first deducted and paid.  Punitive damages may be awarded as provided in section 549.20.

*Death Actions in Minnesota: Drawing a Line in the Sand or Committing to a Fair Solution?*, 40 Wm. Mitchell L. Rev. 1543, 1554-55 (2014) ("[A]ll necessary funeral, hospital, and medical expenses are recoverable by the decedent's heirs because this is money that would otherwise have to come out of the decedent's estate."); 4A Minn. Civ. Jury Instructions Guide 91.75. Even though there was doubt about the viability of Johnson's claim, *see Johnson v. Consolidated Freightways, Inc.*, 420 N.W.2d 608, 613 (Minn. 1988), the parties were free to settle a debatable claim for a sum of money.

Johnson and Meshbesher contend, however, that Johnson and the Clinic did not actually settle a claim for medical expenses. We look to the language of the agreements to determine the intent of the parties. *Ryan Contracting Co. v. O'Neill & Murphy, LLP*, 883 N.W.2d 236, 249 (Minn. 2016). We agree with the district court that the settlement documents were unclear about whether the settlement included a claim for Scherf's medical expenses.

The initial settlement agreement provided that it "include[d] all applicable medical liens and subrogation claims," thus implying that the agreement encompassed Scherf's medical expenses. The later settlement agreement and release, however, provided that Johnson agreed to settle and release the Clinic from all claims "on account of, or in any way arising out of, any and all injuries and damages . . . suffered or sustained *by [Johnson]*" arising out of medical treatment provided to Scherf by the Clinic. Johnson argues that the reference to damages suffered *by Johnson* shows that the agreement did not include *Scherf's* medical expenses. But the parties also acknowledged the Fund's asserted subrogation interest in Scherf's medical expenses, and Johnson agreed to satisfy the Fund's subrogation rights, if any, as determined by a court. If the parties had intended to exclude medical expenses from the settlement, then there would have been little reason to address the Fund's subrogation interest. Because the settlement agreements are susceptible to two reasonable interpretations, they are ambiguous as to whether Johnson and the Clinic settled the medical expenses claim. *See Dykes*, 781 N.W.2d at 582.

The district court then concluded based on other evidence that the settlement agreement included Scherf's medical expenses. We agree with this conclusion. In Johnson's suit against the Clinic, she sought damages permitted by Minn. Stat. § 573.02, and Johnson had at least a colorable argument to seek Scherf's medical expenses. Johnson's pre-settlement letter to the mediator asserted a large amount of damages for medical expenses. Johnson and Meshbesher then represented to the district court that Johnson and the Clinic settled the claim for medical expenses. During a hearing before the magistrate judge, Johnson and Meshbesher acknowledged that the settlement agreements included the claim for medical expenses, although they asserted then that the claim was settled for no money. These admissions support the district court's conclusion that Johnson and the Clinic settled the claim for medical expenses.

As to the amount of the settlement, Johnson and Meshbesher argue only the Fund's recovery should be limited to expenses that were caused by the Clinic's negligence. The Fund's subrogation right is not so limited. Under the terms of the Plan, the Fund properly asserted a subrogation interest in "any . . . recovery" from the Clinic for Scherf's medical expenses. The Fund is entitled to whatever Johnson recovered for Scherf's medical expenses in her settlement with the Clinic, whether or not Johnson ultimately could have recovered those expenses at trial.

For the foregoing reasons, the judgment of the district court is affirmed.

_____