# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-3230

_____

Mark Boswell; David Lutton, individually, and on behalf of all others similarly situated; Vickie Snyder

*Plaintiffs - Appellees*

v.

Panera Bread Company, a Delaware Corporation; Panera, LLC, a Delaware Limited Liability Company

*Defendants - Appellants*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 21, 2017
Filed: January 5, 2018

_____

Before LOKEN, ARNOLD, and SHEPHERD, Circuit Judges.

_____

ARNOLD, Circuit Judge.

The central issue in this contracts case is whether certain at-will employees can hold their employer, Panera, LLC, to its promise to pay them a bonus. The district

court[1] thought so and granted summary judgment to the employees. We agree and affirm.

In an effort to recruit and retain general managers for its restaurants, Panera created a program under which qualifying managers were eligible to receive a relatively large one-time bonus, among other emoluments. A few years after creating the program, Panera asked the managers to sign an employment agreement that incorporated a compensation plan providing that the one-time bonus would be paid about five years after the manager executed the agreement. The amount of the bonus depended heavily on the profitability of the manager's restaurant over the final two years of the five-year period. To receive the bonus, the manager had to be a manager under the program on the date when the bonus was payable.

Panera decided in 2010 that it would set a $100,000 cap on the amount of the bonus because the bonuses would otherwise be too costly. Panera informed its managers of the cap in 2011 and explained that it would become effective in January 2012. Panera received no complaints about the cap until 2014 when one of the managers under the program, Mark Boswell, raised concerns shortly before he received his bonus. Boswell and two other managers, David Lutton and Vickie Snyder, then sued Panera for breach of contract on behalf of themselves and a class of similarly situated managers, maintaining that Panera had violated the agreements by imposing the cap. Panera responded that the parties had orally terminated and replaced—or, in legal parlance, novated—the agreement because the managers, by their words and actions, assented to a new agreement containing the cap. Panera also asserted that the managers had waived any claims they had regarding the cap by continuing to work without complaint or were estopped from raising any claims about

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

it because it was too late. It argued as well that an economic downturn allowed it to impose the cap because the purpose of the contract had been commercially frustrated.

The district court certified a class of about sixty-seven managers and eventually granted them summary judgment. In doing so, the court rejected the managers' characterization of the agreement as a bilateral contract: The court decided instead that Panera had extended an offer to enter into a unilateral contract and that the offer had become irrevocable because all class members had rendered a substantial part of the requested performance by working at least a year after signing their agreements. The court noted that, even if the agreement amounted to a bilateral contract, Panera's novation defense failed: it held that any supposed novation was not supported by consideration since Panera did not promise to do anything that it was not already obligated to do. The court also rejected Panera's waiver and estoppel defenses because Panera's imposition of the cap was a repudiation of its bonus offer, and the managers were free to continue performing rather than treat the repudiation as an immediate breach. It also rejected Panera's commercial-frustration defense, holding that the economic downturn was a foreseeable event that Panera should have anticipated when making the bonus offer. Panera appeals the district court's grant of summary judgment—a decision we review de novo. *Mackey v. Johnson*, 868 F.3d 726, 729 (8th Cir. 2017). The parties agree that we apply Missouri substantive law in this diversity case. *See DeCoursey v. Am. Gen. Life Ins. Co.*, 822 F.3d 469, 473 (8th Cir. 2016).

We note as a preliminary matter that, like the district court (and contrary to the managers' continued insistence on appeal), we think that under Missouri law the agreements amounted to offers by Panera to enter into a unilateral contract. A bilateral contract is a contract containing mutual promises imposing some legal duty or liability on each promisor. *Mayer Hoffman McCann, P.C. v. Barton*, 614 F.3d 893, 903 (8th Cir. 2010). A bilateral contract, like all contracts, must be supported by consideration, which "consists either of a promise (to do or refrain from doing

something) or the transfer or giving up of something of value to the other party." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (en banc).

The managers here were already at-will employees when they signed their respective agreements, and those documents expressly recognized that the managers would remain at-will employees during the five-year bonus period. Under Missouri law, a promise to continue an at-will employment relationship cannot serve as consideration to create an enforceable contract, *see id.* at 775, because, as one court explained, at-will employment is terminable at the will of either party on a moment-by-moment basis, so the employment relationship is not legally enforceable. *Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 26 (Mo. Ct. App. 2008). An employee's promise to work for an employer until the employee decides to quit is therefore not much of a promise at all, at least not one sufficient to serve as consideration. As a result, employment at will can be characterized as a unilateral contract because there is an express or implied promise that the employer will pay if the employee works as directed. *Id.*

The managers concede that, under Missouri law, continued at-will employment is not consideration to support a bilateral contract. But, they argue, they made a number of other promises when they signed their employment agreements that do amount to consideration, including a "restrictive confidentiality covenant" under which the managers promised not to disclose "any secret or confidential material or information relating to any aspect of the business or operations of Panera," promises to abide by forum-selection and choice-of-law clauses, and waivers of the right to recover consequential and punitive damages and the right to a jury trial. We cannot, however, square the managers' argument with *Baker*, where the Supreme Court of Missouri held that "[n]either Baker's continued at-will employment nor the incidents of that employment provide consideration." *Baker*, 450 S.W.3d at 776. The *Baker* court does not go into much detail about what constitutes an "incident" to at-will employment, so we must predict how the Supreme Court of Missouri would flesh out

the term, *see DeCoursey*, 822 F.3d at 476, and we think that that court would conclude that the managers' promises here fit within that category. The employee in *Baker* made a similar confidentiality covenant, *see* 450 S.W.3d at 785 (Wilson, J., dissenting), but the *Baker* court viewed that covenant as an incident to the at-will employment. *Id.* at 776. The managers' other promises stem from boilerplate contractual provisions that are tied directly to the at-will relationship and not more broadly to other situations. For example, the waiver of the right to recover consequential and punitive damages applies to "any claim directly or indirectly arising from or relating to" the employment agreement. In light of *Baker*, we think that the Supreme Court of Missouri would classify the subsidiary promises as mere incidents to the at-will relationship, so they likewise cannot serve as consideration for a bilateral contract.

Our conclusion that the agreement does not constitute a bilateral contract does not, however, conclude the managers' claim. As the district court correctly pointed out, an employer's "promise to pay a bonus in return for an at-will employee's continued employment is an offer for a unilateral contract." *See Cook v. Coldwell Banker*, 967 S.W.2d 654, 657 (Mo. Ct. App. 1998). An offeror in a unilateral contract receives performance, rather than a promise, as consideration in return for the offeror's promise. *Id.*

The question that arises at this point is whether Panera could modify or terminate the terms of its offer to pay the one-time bonus by imposing a cap on it. Generally, an offeror can withdraw an offer at any time before the offeree accepts it. *Id.* But the Missouri Court of Appeals has said several times that a party may not revoke an offer to make a unilateral contract after the offeree has substantially performed it because the offeree, at that point, has supplied consideration to make the contract enforceable against the offeror to the extent it has been performed, *see id.*, and because "great injustice may arise" if the offeror can revoke an offer after the offeree has spent time and expense in performing. *See* 1 Williston on Contracts § 5:13

(4th ed. 2017). Panera takes issue with the district court's conclusion that all the managers in the class had substantially performed under the offer as a matter of law so as to render the offer irrevocable.

We do not think, though, that the Supreme Court of Missouri, if confronted with the issue, would conclude that the offeree of a unilateral-contract offer must render a substantial part of the requested performance to make the offer irrevocable. We think it would conclude instead that an offeree must merely begin performance, and since each of the managers in the class here had at least begun performing under the offer, we conclude that Panera could not modify the offer terms as to any manager.

Panera has not brought to our attention any decision by the Supreme Court of Missouri regarding how much performance is necessary to make a unilateral-contract offer unmodifiable. It is true that the Missouri Court of Appeals has said on several occasions that "substantial" performance is required, *see, e.g.*, *Cook*, 967 S.W.2d at 657, but only decisions of a state's highest court can bind us on questions of state law: Though decisions of state intermediate courts can be persuasive, they are not controlling. *DeCoursey*, 822 F.3d at 476. The Missouri Court of Appeals appears to have derived the substantial-performance principle from a treatise that said with respect to unilateral-contract offers that "the offeror is bound by a contract just as soon as the offeree has rendered a substantial part of that requested performance." *See Coffman Indus., Inc. v. Gorman-Taber Co.*, 521 S.W.2d 763, 772 (Mo. Ct. App. 1975) (quoting 1 Corbin on Contracts § 49 (1963)). That court has since repeated that locution in other cases, but we conclude that, if presented with the issue, the Supreme Court of Missouri would resolve the matter differently.

For one thing, Corbin has abandoned the locution, now saying that "the offeror is bound by a contract just as soon as the offeree has rendered part of the requested performance." 1 Corbin on Contracts § 2.29 (rev. ed. 1993 & Supp. 2017). In

addition, the two other authorities the *Coffman* court relied on in adopting the substantial-performance principle do not help establish that substantial performance is required. Nowhere in the single case that the *Coffman* court cites does the word "substantial" ever appear, *see Am. Publ'g & Engraving Co. v. Walker*, 87 Mo. App. 503 (Mo. Ct. App. 1901), and the other treatise that *Coffman* cites provides that "the offeror becomes bound from the time performance is begun." *See* 1 Williston on Contracts § 60A (3d ed. 1958). The current version of that treatise adopts the same principle. *See* 1 Williston on Contracts § 5:13 (4th ed. 2017). Comment d to § 45 of the Restatement (Second) of Contracts agrees that it is "the beginning of performance" that renders the offer of a unilateral contract binding so that the offeror cannot revise its terms, and the Supreme Court of Missouri routinely finds the Restatement (Second) of Contracts persuasive. *See, e.g.*, *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 858–59 (Mo. 2006) (en banc). Based on the current state of the law, therefore, we think that the Supreme Court of Missouri, if faced with the question, would conclude that the offeree's beginning of performance would render the offer irrevocable. So Panera's imposition of the cap would be an ineffective attempt to modify its unilateral-contract offer.

Panera maintains, though, that no matter when a unilateral-contract offer becomes irrevocable as a general matter, in this specific instance Panera expressly reserved the power to revoke or modify its offer. It argues that it reserved that power by conditioning the payment of the bonus on the managers' continued employment, a matter that Panera controlled since the employment was at will. Further, Panera had the discretion to modify one of the variables in the formula used to calculate the bonus, so it could effectively control the amount of the bonus.

In support of its contention, Panera points to a comment in the Restatement that the general rule against modifying or terminating a unilateral-contract offer after the offeree begins performance "yields to a manifestation of intention which makes reliance unjustified," and so the offeror's "reservation of power to revoke [the offer]

-7-

after performance has begun means that as yet there is no promise and no offer." *See* Restatement (Second) of Contracts § 45 cmt. b. We do not think that the reservation of power here accomplishes the goal that Panera hopes. Keeping in mind that the purpose of the rule precluding an offeror from modifying or terminating a unilateral-contract offer after the offeree begins performance is "to protect the offeree in justifiable reliance on the offeror's promise," *see id.*, the alleged reservation of power here adds nothing beyond what the at-will relationship already provides, so we think this case in this respect is just like *Cook*. Panera tries to distinguish *Cook* by arguing that the offeree there had fully performed when the offeror attempted to modify the offer. But that fact is of no moment because the offer's terms were locked in before full performance, as is the case here. The crucial point is that the at-will employee in *Cook* had received a bonus offer from her employer, and the court held the employer to it. The at-will relationship did not render the bonus promise illusory even though the employer could have terminated the employee and thus made it impossible for her to satisfy the prerequisites to receiving the bonus. Likewise here, Panera could have terminated the managers if it chose and precluded them from receiving the bonus, but it did not. Or Panera could have adjusted the variable in the formula over which it had control, but it did not. Since the managers had begun performing the unilateral-contract offer, Panera was not entitled to move the goalposts on them by imposing a bonus cap, which was outside the contemplation of the unilateral-contract offer.

To protect the offeree's justifiable reliance on the offer, moreover, the language of a reservation of power to modify or terminate a unilateral-contract offer should be clear. The Restatement comment on which Panera relies draws from *Spooner v. Reserve Life Insurance Co.*, 287 P.2d 735, 737 (Wash. 1955), where an employer offered employees a bonus but also said that the "bonus is a *voluntary* contribution on the part of the Company. It is agreed by you and by us that it may be withheld, increased, decreased or discontinued, individually or collectively, with or without notice." No employee who read such a reservation could justifiably rely on actually receiving a bonus. Here, on the other hand, we have no such clear language, and

employees are instead left to connect the alleged dots between their at-will status and a condition to payment. The compensation plans in fact seem to suggest the opposite of what Panera contends because they expressly contemplate Panera's right to terminate the plan in its own discretion after it has paid the bonus or determined that none is due. That Panera may terminate after these events implies that it cannot do so beforehand.

For these reasons, and given that we should construe a contract to avoid rendering terms meaningless or illusory, *see Parker v. Pulitzer Publ'g Co.*, 882 S.W.2d 245, 250 (Mo. Ct. App. 1994), we reject Panera's contention that it reserved the power to modify or terminate its bonus offer before the managers began performing in accordance with that offer.

We likewise reject Panera's derivative argument that the district court should have revisited its decision to certify the class after determining that the bonus offers were offers to make a unilateral contract. We disagree with Panera that, under unilateral-contract principles, a court would have to determine on a case-by-case basis whether each manager had worked enough to render the offer irrevocable. By working for more than a year in accordance with the unilateral-contract offer, each class member had necessarily begun performance, so no individual analysis is needed, and the class is no less certifiable now than it was when certified.

Panera next argues that the district court erred in rejecting its novation, waiver, and estoppel defenses. A novation is the substitution of a new contract for an old one. *Ponze v. Guirl*, 794 S.W.2d 699, 702 (Mo. Ct. App. 1990). A waiver is the intentional relinquishment of a known right, and, to constitute a waiver, "conduct must be so manifestly consistent with and indicative of an intention to renounce a particular right or benefit that no other reasonable explanation of the conduct is possible." *Acetylene Gas Co. v. Oliver*, 939 S.W.2d 404, 409 (Mo. Ct. App. 1996). Equitable estoppel arises from the unfairness of allowing parties to assert their rights belatedly if they

knew about those rights but did nothing to enforce them until the other party has, acting in good faith, been disadvantaged by changed conditions. *Comens v. SSM St. Charles Clinic Med. Grp., Inc.*, 258 S.W.3d 491, 496 (Mo. Ct. App. 2008). Missouri courts do not favor equitable estoppel and do not allow it to be invoked lightly. *Id.*

Since continued at-will employment does not constitute consideration, Panera's novation defense fails as a matter of law because, when Panera imposed the cap, the only promises, if any, exchanged by Panera and the managers was continued at-will employment. The parties therefore did not form a new contract. We also agree with the district court that Panera's imposition of the cap constituted a repudiation of the contract. A party's renunciation of a contractual duty before the time fixed for performance is a repudiation; but a repudiation ripens into a breach only if the promisee elects to treat it as such since the promisee can elect either to wait till the time for performance or to treat the repudiation as a breach and a final assertion by the promisor that he is no longer bound by the contract. *Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002). By proceeding as they did, the managers cannot be said to have waived their claims or be equitably estopped from asserting them; they were allowed to perform their part of the agreement and wait and see if Panera followed through on its repudiation.

Panera also suggests that, by continuing to work, the managers accepted the cap. But silence is not automatically acceptance; something more than the employee's mere continuance of work is needed to show acceptance of a unilateral modification to employment terms. *See Katz v. Anheuser-Busch, Inc.*, 347 S.W.3d 533, 545 (Mo. Ct. App. 2011). Panera insists that, if continuing to work is not enough to show acceptance, then the managers' mere continuing to work did not amount to an acceptance of their underlying employment agreements because such performance must be done with the intent to accept those agreements. *See Monsanto Co. v. Garst Seed Co.*, 241 S.W.3d 401, 412–13 (Mo. Ct. App. 2007). That is true, but Panera forgets that the managers also signed their employment agreements, and "signatures

-10-

remain a common, though not exclusive, method of demonstrating agreement." *Morrow*, 273 S.W.3d at 22–23.

Finally, Panera takes issue with the district court's rejection of its commercial-frustration defense, a defense available if the happening of an event not foreseen by the parties and not caused by or under the control of a party destroys or nearly destroys either the value of the performance or the object or purpose of the contract. *Clean Unif. Co. St. Louis v. Magic Touch Cleaning, Inc.*, 300 S.W.3d 602, 609 (Mo. Ct. App. 2009). If the event is foreseeable, though, the parties should provide for its occurrence in the contract, and when they do not, the risk falls on the promisor. *Id.* Panera imposed the cap essentially because a change in general business conditions made the bonus payments too expensive. We can hardly fault the district court's finding on this ample record that a decline in general business conditions was foreseeable. Indeed, everyone knows that business is risky and markets undependable. Panera could have accounted for lower-than-anticipated profits when it devised the program and changed the formula to the bonus payment, but it did not. So it bears the risk.

Affirmed. We dismiss as moot the managers' motion for leave to file a surreply brief.

LOKEN, Circuit Judge, concurring.

I agree that Panera is liable to pay the general managers the bonuses Panera initially promised, but I reach that end traveling a somewhat different, and perhaps significantly narrower, path.

Each general manager had an at-will employment relationship with Panera. This relationship is sometimes called a "unilateral contract." It is not a legally enforceable contract of employment because it is terminable at will. Morrow v.

Hallmark Cards, Inc., 273 S.W.3d 15, 26 (Mo. App. 2008). Typically, an at-will relationship consists of a unilateral offer by the employer to compensate the employee at an offered rate for services performed. After performance, the employee is entitled to receive "the definite amount [offered] and no more, if the agreement is definite as to amount." Restatement (Second) of Agency § 443(a) (1958). Until the relationship is terminated, "either party can announce at any time that there are new conditions on either working or on providing work. The other can say yes or no." Morrow, 273 S.W.3d at 26. "A promise to pay a bonus in return for an at-will employee's continued employment is an offer for a unilateral contract which becomes enforceable when accepted by the employee's performance." Cook v. Coldwell Banker, 967 S.W.2d 654, 657 (Mo. App. 1998).

In this case, to provide a financial inducement to retain its at-will general managers, Panera offered a performance bonus program that altered the at-will relationship. The program was reflected in two written agreements signed by each party. First, an Employment and Confidentiality Agreement terminated all prior agreements, confirmed that employment was on an at-will basis, specified the general manager's base salary and benefits, and provided that "Employee also shall be eligible to receive additional compensation . . . as set forth in the Compensation Plan." Second, the Joint Venture General Manager Compensation Plan provided, as relevant here, that the general manager would receive "a one-time JV GM Buyout . . . on the terms and conditions set forth herein," provided he is performing the duties of general manager on the date the JV GM Buyout is made. The Compensation Plan set forth a detailed formula for calculating the Buyout. One specific part of the formula was subject to change by "the Panera JV Board, in the exercise of its sole discretion." Of critical importance, in my view, the Compensation Plan also provided: (i) "your employment relationship with Panera is terminable at will," (ii) the Plan is "final, complete and exclusive" except as otherwise provided in the Employment Agreement, and (iii) "No modification or waiver shall be valid unless in writing signed by the party against whom the same is sought to be enforced."

As <u>Morrow</u> makes clear, the terms of a typical at-will employment relationship can be unilaterally changed by the employer; the employee can either accept the change or quit. But an employer who offers a unilateral contract is bound by terms promised in the offer, if the employee then accepts the offer by performance. Here, because the Compensation Plan offer was a future bonus intended to encourage extended at-will employment, Panera understandably limited its freedom to change or revoke the Plan by including a no-modification provision. Panera subsequently and unilaterally changed the bonus formula to the general managers' disadvantage, a change not authorized by the terms of the Compensation Plan and not agreed to by the general managers as the no-modification provision required. This was not breach of a bilateral contract, as the general managers argued, but it did breach a promise that was an essential term of the unilateral contract Panera offered. Therefore, the modification was *unenforceable* and the general managers, after they continued to work and fully performed the services required to accept the offered bonuses, were entitled to hold Panera to the terms of the unilateral contract and collect the bonuses they were initially offered. <u>Cf.</u> <u>Supermarket Merch. & Supply, Inc. v. Marschuetz</u>, 196 S.W.3d 581, 586-87 (Mo. App. 2006).

Because I would resolve this dispute within the four corners of the operative contract documents, I need not decide what measure of part performance by the offeree makes a unilateral contract binding. Here, unlike the facts in <u>Cook</u>, the general managers earned *no* part of the bonus until the JV GM Buyout was payable, which is why the no-modification provision was essential to make it an effective financial inducement. In more typical at-will employment disputes, I have grave doubt the Supreme Court of Missouri would apply general principles applicable to other kinds of unilateral contracts to conclude that merely beginning at-will employment renders the terms and conditions of that employment irrevocable, as the court seems to conclude.

_____