SHEPHERD, Circuit Judge, dissenting.
 

 Vacating a jury's decision is not to be done lightly on appellate review. Because the majority dismisses a defendant and vacates the jury's punitive damages verdict on procedurally and substantively suspect grounds, I respectfully dissent from Sections I, II.A, and III of the majority opinion.
 

 The punitive damages verdict is only vacated because the majority disagrees with the application of judicial estoppel. Schaeffler Group USA ("Schaeffler") remained in this action because the district court estopped it from arguing that it was a separate entity from FAG Bearings, LLC ("FAG Bearings"). The majority disagrees
 and so, effectively, dismisses Schaeffler. From there, the majority goes on to hold that Schaeffler's presence at trial tainted the punitive damages verdict and thus overturns it.
 

 I first part ways with the majority on how it handles the judicial estoppel ruling. I concede that there was an abuse of discretion in how the district court applied judicial estoppel here.
 
 See
 

 Stallings v. Hussmann Corp
 
 .,
 
 447 F.3d 1041
 
 , 1046 (8th Cir. 2006) (application of judicial estoppel is reviewed for abuse of discretion). State law, not federal law-which the district court applied-controls application of judicial estoppel in diversity cases.
 
 Spencer v. Annett Holdings, Inc.
 
 ,
 
 757 F.3d 790
 
 , 797 (8th Cir. 2014) ("Our precedent calls for the application of state law elements of judicial estoppel in diversity cases.").
 

 Normally when this occurs, we "remand[ ] for application of the correct legal standard."
 
 Rille v. PricewaterhouseCoopers LLP
 
 ,
 
 803 F.3d 368
 
 , 374 (8th Cir. 2015) (en banc). This would be the prudent course here because judicial estoppel is a "somewhat malleable doctrine using equitable principles,"
 
 Dunellen, LLC v. Getty Prop. Corp.
 
 ,
 
 567 F.3d 35
 
 , 38 (1st Cir. 2009), and the parties have not briefed how the issue would be resolved under Missouri law.
 
 See
 

 Pariser v. Christian Health Care Sys., Inc.
 
 ,
 
 816 F.2d 1248
 
 , 1253 (8th Cir. 1987) (holding that "question of relief should be decided under Illinois law. ... It has not been briefed in this Court, and we leave it to the District Court to decide on remand.").
 

 Yet the majority forgoes our normal route. I respectfully disagree with the result reached. Because this Court can affirm "on any ground supported by the record,"
 
 Chavez-Lavagnino v. Motivation Educ. Training, Inc.
 
 ,
 
 767 F.3d 744
 
 , 751 (8th Cir. 2014) -and because of the "extreme deference" jury verdicts are entitled to,
 
 Craig Outdoor Advert., Inc. v. Viacom Outdoor, Inc
 
 .,
 
 528 F.3d 1001
 
 , 1009 (8th Cir. 2008) -I would affirm the application of judicial estoppel under Missouri law given that there is evidence in the record to do so.
 

 First, the legal backdrop. The majority concedes that the Supreme Court of Missouri has never adopted three-factor federal judicial estoppel framework articulated in
 
 New Hampshire v. Maine
 
 ,
 
 532 U.S. 742
 
 ,
 
 121 S.Ct. 1808
 
 ,
 
 149 L.Ed.2d 968
 
 (2001). And it points out that the Supreme Court of Missouri has not once, but twice, had the opportunity to adopt those factors but declined to do so.
 
 [4]
 
 Nevertheless it "conclude[s] that the Supreme Court of Missouri would consider the non-exclusive
 
 New Hampshire
 
 factors in other cases when they are relevant" because the Missouri Court of Appeals has applied the factors in some cases.
 

 This starting point is problematic because "only decisions of a state's highest court can bind us on state law," and while "decisions of state intermediate courts can be persuasive, they are not controlling."
 
 Boswell v. Panera Bread Co.
 
 ,
 
 879 F.3d 296
 
 , 302 (8th Cir. 2018) (Arnold, J.);
 
 see also
 
 Garner et al.,
 
 The Law of Judicial Precedent
 
 656 (West 2016) ("A state high court's interpretations of state law are authoritative in all other jurisdictions."). In
 
 Boswell
 
 , the "Missouri Court of Appeals ... repeated [a] locution" that had never been adopted by the Supreme Court of Missouri, and we declined to apply it.
 
 879 F.3d at 303
 
 . Boswell's logic is all the more relevant here because the Missouri Court of Appeals has not always applied the framework that the majority presents as Missouri law.
 
 See, e.g.
 
 ,
 
 Nooter Corp. v. Allianz Underwriters Ins. Co.
 
 ,
 
 536 S.W.3d 251
 
 , 289 (Mo. Ct. App. 2017), reh'g denied (Jan. 23, 2018).
 

 In contrast with the majority, I begin with the Supreme Court of Missouri's formulation of judicial estoppel.
 
 Cf.
 
 Mo. Const. art. V, § 2 ("The supreme court shall be the highest court in the state ... [i]ts decisions shall be controlling in all other courts."). In its last opinion articulating a standard for judicial estoppel, the Supreme Court of Missouri opted for a general formulation: "[j]udicial estoppel will lie to prevent litigants from taking a position, under oath, in one judicial proceeding, thereby obtaining benefits from that position in that instance and later, in a second proceeding, taking a contrary position in order to obtain benefits ... at that time."
 
 State Board
 
 ,
 
 256 S.W.3d at 54
 
 (second alteration in original) (internal quotation marks omitted).
 

 Just as instructive as the
 
 State Board
 
 formulation is the
 
 State Board
 
 analysis. There, it was alleged that a "representation" made in a prior brief estopped a party from making an argument. The
 
 State Board
 
 court was not concerned with factors other courts have held to be decisive, including (1) whether the opposing party relied on the statement,
 
 cf.
 
 18B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 4477 (2d ed. 1981 & Supp. 2017) (" Federal Practice and Procedure § 4477") (describing reliance requirement adopted by some courts)
 
 [5]
 
 ; and (2) whether the prior representation was accepted by a court,
 
 cf.
 

 Maharaj v. Bankamerica Corp.
 
 ,
 
 128 F.3d 94
 
 , 98 (2d Cir. 1997) (judicial estoppel applicable
 
 only
 
 where "inconsistent position was adopted by the court in some manner"). Instead, its analysis was straightforward: it simply looked at whether the "representation" in the prior proceeding foreclosed the party's position in the suit before it.
 
 State Board
 
 ,
 
 256 S.W.3d at 55
 
 (finding that prior representation was general in nature and did not "purport to draw a legal conclusion," meaning it did not foreclose the party's argument in the current proceeding).
 

 All this is to say that the Supreme Court of Missouri has adopted an analytic framework, binding on us, of judicial estoppel that is less focused on rigid requirements and more on "preserv[ing] the dignity of the courts."
 
 Edwards v. Durham
 
 ,
 
 346 S.W.2d 90
 
 , 101 (Mo. 1961). This approach is not unique. Wright & Miller has termed it the "fast-and-loose theory," which is focused on preventing the "deliberate toying with the courts." Federal Practice and Procedure § 4477 ;
 
 see also
 

 In re Contest of Primary Election Candidacy of Fletcher
 
 ,
 
 337 S.W.3d 137
 
 , 144 (Mo. Ct. App. 2011) ("Were parties allowed to take inconsistent positions at their whim, it would allow chaotic and unpredictable results in our court system, which of course would be problematic for a host of reasons."). And thus our inquiry, as mandated by the Supreme Court of Missouri, should be exactly that: has Schaeffler "tak[en] a contrary position [to one it has taken previously] in order to obtain benefits" in this case?
 
 State Board
 
 ,
 
 256 S.W.3d at 54
 
 .
 

 I believe we can answer that question in the affirmative, which brings me to the prior representations made by Schaeffler. There are two representations in the record, one made before the Court of International Trade, and one made in the District of Connecticut.
 
 [6]
 
 The majority makes a plausible case that the former is not a "contrary position." The majority attempts to say the same with regards to the latter. By contrast, I find the latter representation to be decisive evidence of Schaeffler "toying with the courts."
 

 As a threshold matter, the majority suggests that, under
 
 State Board
 
 , Schaeffler did not "obtain[ ] benefits" from the position it took before the district court in Connecticut because it was voluntarily dismissed. This is a mischaracterization of
 
 State Board
 
 . The pertinent portion of the
 
 State Board
 
 formulation, again, is "[j]udicial estoppel will lie to prevent litigants from taking a position, under oath, in one judicial proceeding,
 
 thereby
 
 obtaining benefits."
 
 256 S.W.3d at 54
 
 (emphasis added). The "benefit[ ]," as defined by
 
 State Board
 
 , is being able to take a litigating position under oath in court as Schaeffler did in the district court in Connecticut.
 
 See
 

 Thereby
 
 ,
 
 Black's Law Dictionary
 
 (10th ed. 2014) (defining "thereby" as "[b]y that means" or "in that way").
 

 On the substance, the majority argues that Schaeffler represented to the district court in Connecticut that "FAG Bearings Corporation" lacked the capacity to be sued. So, because "FAG Bearings, LLC"-not "FAG Bearings Corporation"-"survived as Schaeffler's wholly-owned subsidiary," the majority finds no inconsistency with the representation made here by Schaeffler: FAG Bearings, LLC is a distinct corporate entity.
 

 The majority does not grapple, however, with the core of Schaeffler's position in the Connecticut proceeding. After Schaeffler acknowledged FAG Bearings converted from a corporation to an LLC, it gave its bottom line: " 'FAG Bearings' is an assumed name or a 'd/b/a' under which Schaeffler sometimes conducts business ... [i]t has no distinct corporate existence." D. Conn. Motion at 2.
 
 [7]
 

 It is true that before asserting that FAG Bearings had "no distinct corporate existence," Schaeffler referred to it as a "wholly-owned subsidiary of Schaeffler." D. Conn. Motion at 2. As the majority correctly notes, even if "Schaeffler acquired all or substantially all of FAG Bearings' assets, this fact alone would not ... transfer FAG Bearings' liabilities to Schaeffler." There are, however, broad-based exceptions to this, including "when the purchaser is merely a continuation of the seller."
 
 Edwards v. Black Twig Mktg. & Commc'ns LLC
 
 ,
 
 418 S.W.3d 512
 
 , 520 (Mo. Ct. App. 2013). Thus, where "the business operations are identical" and the "transferee
 uses ... [the] name of the transferor," continuation will typically be found.
 
 See
 

 State ex rel. Family Support Div. v. Steak'm Take'm LLC
 
 ,
 
 524 S.W.3d 584
 
 , 591 (Mo. Ct. App. 2017) (continued running of a restaurant with same name despite change in ownership enough for continuation).
 

 By all measures, Schaeffler argued it was a continuation of FAG Bearings before the district court in Connecticut. It argued that FAG Bearings "sold all of its assets except for some land and buildings" to Schaeffler. D. Conn. Motion at 2. And, critically, it argued that " 'FAG Bearings' is an assumed name or a 'd/b/a.' " D. Conn. Motion at 2. Add that to Schaeffler's unqualified assertion that FAG Bearings "has no distinct corporate existence," D. Conn. Motion at 2, it becomes clear that Schaeffler argued that "[Schaeffler] is merely a continuation of [FAG Bearings]."
 
 Edwards
 
 ,
 
 418 S.W.3d at 520
 
 .
 

 In sum: Schaeffler's General Counsel swore in another proceeding before an Article III court that FAG Bearings lacks a "distinct corporate existence" from Schaeffler in order to avoid liability and, in these proceedings, Schaeffler argues that "[it] is separate from FAG Bearings," Appellant Br. 11, to, again, avoid liability.
 
 Cf.
 

 New Hampshire
 
 ,
 
 532 U.S. at 749-50
 
 ,
 
 121 S.Ct. 1808
 
 (noting it is "uniformly recognized" that judicial estoppel is meant to "prohibit[ ] parties from deliberately changing positions according to the exigencies of the moment" (internal quotation marks omitted) ).
 

 The disagreement over how Missouri law applies to the facts here reinforces that remand-and a decision after briefing and argument-is the correct course of action. But given that we have decided not to remand, I believe that the majority errs in reversing the district court's judicial estoppel determination. Because this is the only reason the majority dismisses Schaeffler and reverses the punitive damages verdict, I do not believe those actions are warranted. Instead, I would uphold both the compensatory and punitive damages verdicts in full against both Schaeffler and FAG Bearings. Thus, I join in Sections II.B and II.C of the majority opinion, which upholds the compensatory damages verdict against FAG Bearings, but respectfully dissent from the rest of the opinion.
 

 The majority deems it significant that the Supreme Court of Missouri once cited the U.S. Supreme Court for a general formulation of judicial estoppel.
 
 See
 

 Taylor v. State
 
 ,
 
 254 S.W.3d 856
 
 , 858 (Mo. 2008). There is a distinction, however, between citing general language-thereby maintaining flexibility in the analysis-and a three-factor framework, which the Taylor court could have cited. Significantly, the Missouri Court of Appeals started using the
 
 New Hampshire
 
 framework prior to Taylor.
 
 See, e.g.
 
 ,
 
 Vinson v. Vinson
 
 ,
 
 243 S.W.3d 418
 
 , 422 (Mo. Ct. App. 2007). And perhaps most importantly, the last articulation of judicial estoppel by the Supreme Court of Missouri in
 
 State Board of Accountancy v. Integrated Financial Solutions, L.L.C.
 
 ,
 
 256 S.W.3d 48
 
 , 54 (Mo. 2008) ("
 
 State Board
 
 "), was also general in nature. Contrary to the majority's assertion, I am not arguing that there was a "
 
 sub silentio
 
 " overruling of Taylor in
 
 State Board
 
 . What I am saying, though, is that there was never an explicit, or even "
 
 sub silentio
 
 ," adoption of the
 
 New Hampshire
 
 factors by the Supreme Court of Missouri.
 

 In
 
 Taylor
 
 , the Supreme Court of Missouri counseled that judicial estoppel should apply "especially if"-not only if-"it be to the prejudice of the party who has acquiesced in the position formerly taken by him."
 
 254 S.W.3d at 858
 
 (internal quotation marks omitted).
 

 The District of Connecticut representation was made in a motion for summary judgment.
 
 See
 
 RAPP 634-36. It is referred to throughout as the "D. Conn. Motion."
 

 Schaeffler's General Counsel at that time, Steven L. Crow, Esq., swore to these facts in an affidavit underlying the D. Conn. Motion. No party entered the underlying affidavit in the record here.